1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3    HONORABLE ANDREW J. GUILFORD, JUDGE PRESIDING

4              - - - - - - -

5   UNITED STATES OF AMERICA,        )
                                     )
6            Plaintiff,              )
                                     )
7        vs.                         ) No. SACR 06-129-AG
                                     )
8   EDWARD SHOWALTER,                )
                                     )
9            Defendant.              )
                                     )
    _____ )

10

11

12

13

14        REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                  Sentencing

16            Santa Ana, California

17            Monday, March 3, 2008

18

19

20

21  Jane C.S. Rule, CSR 9316
    Federal Official Court Reporter
22  United States District Court
    411 West 4th Street, Room 1-053
23  Santa Ana, California 92701
    (714) 558-7755
24

25  08-03-03 SHOWALTER

SACR 06-129-AG - 03/03/2008

2

```
1   APPEARANCES OF COUNSEL:

2


3   On behalf of PLAINTIFF UNITED STATES OF AMERICA:

4


5                   DEPARTMENT OF JUSTICE
                    OFFICE OF THE UNITED STATES ATTORNEY
6                   BY:   ANDREW STOLPER
                          Assistant United States Attorney
7                   411 W. Fourth Street
                    Suite 8000
8                   Santa Ana, California 92701
                    (714) 338-3500
9


10


11  On behalf of DEFENDANT EDWARD SHOWALTER:

12


13                  LAW OFFICES OF EZEKIEL E. CORTEZ
                    By:   EZEKIEL E. CORTEZ
14                        Attorney at Law
                    1010 Second Avenue
15                  Suite 1850
                    San Deigo, California 92101
16                  (619) 237-0309

17                  - AND -

18                  BIENERT, MILLER, WEITZER & KATZMAN
                    By:   KENNETH M. MILLER
19                        Attorney at Law
                    115 Avenida Mirimar
20                  San Clemente, California 92672
                    (949) 369-3700
21


22


23


24


25
```

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

1                          I N D E X

2

3

4       SENTENCING AFTER GUILTY PLEA TO ONE COUNT INFORMATION

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SACR 06-129-AG - 03/03/2008

4

| | |
|---|---|
| 1 | **SANTA ANA, CALIFORNIA, MONDAY, MARCH 3, 2008** |
| 2 | **SENTENCING** |
| 13:46:27 3 | (3:38 p.m.) |
| 15:38:54 4 | THE CLERK:  Remain seated and come to order.  This |
| 15:38:55 5 | Court is again in session. |
| 15:38:58 6 | Item 9, SACR 06-129, United States of America v. |
| 15:39:05 7 | Edward Showalter. |
| 15:39:10 8 | Appearances, please, counsel. |
| 15:39:11 9 | MR. STOLPER:  Good afternoon, your Honor.  Andrew |
| 15:39:13 10 | Stolper on behalf of the government. |
| 15:39:13 11 | MR. CORTEZ:  Good afternoon, Your Honor.  Ezekiel |
| 15:39:14 12 | Cortez on behalf of Mr. Showalter, who is present. |
| :39:18 13 | MR. MILLER:  Good afternoon, your Honor.  Ken |
| 15:39:20 14 | Miller also on behalf of Mr. Showalter. |
| 15:39:23 15 | THE COURT:  All right.  Good afternoon, counsel. |
| 15:39:25 16 | Good afternoon, Mr. Showalter. |
| 15:39:26 17 | We are here for a sentencing.  Let me tell you at |
| 15:39:33 18 | least some of the documents I've received because, indeed, |
| 15:39:36 19 | I've received many documents.  I want to be sure I have |
| 15:39:46 20 | received and reviewed all the necessary documents. |
| 15:39:52 21 | So I have reviewed voluminous financial records |
| 15:40:02 22 | provided by the defendant.  I have reviewed Defendant |
| 15:40:10 23 | Showalter's additional materials for sentencing and for bail |
| 15:40:14 24 | pending appeal.  I've received the government's opposition |
| ¯:40:18 25 | to defendant's motion for bail pending appeal.  I have |

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

SACR 06-129-AG - 03/03/2008

5

15:40:24  1    received an addendum to the presentence report dated

15:40:28  2    February 19th, 2008.  I have received from the probation

15:40:35  3    office a letter dated March 3rd, 2008, although it says

15:40:41  4    "3008."  I have received a letter dated January 29th, 2008,

15:40:51  5    from the probation office.

15:40:55  6            Then I have received documents previously filed

15:41:00  7    and considered at earlier hearings, including the

15:41:03  8    government's position on resentencing dated November 28th,

15:41:07  9    2007, a previous letter from the probation office dated

15:41:13 10    October 29th, 2007, defendant's sentencing memorandum with a

15:41:21 11    date of October 15th, 2007.

15:41:26 12            Counsel, are there other documents I should have

,:41:29 13    received and reviewed.  Mr. Ezekiel (sic)?

15:41:36 14            MR. CORTEZ:  I can't think of anything else, your

15:41:37 15    Honor, no.

15:41:38 16            MR. STOLPER:  Your Honor.

15:41:41 17            THE COURT:  Just a moment.  Let's hear from

15:41:42 18    Mr. Miller.

15:41:46 19            *(Attorney discussion held off the record.)*

15:41:51 20            MR. CORTEZ:  May I have a moment, your Honor?

15:41:53 21            *(Attorney discussion held off the record.)*

15:41:56 22            MR. CORTEZ:  No, we don't have -- your Honor

15:41:58 23    covered everything.

15:41:59 24            THE COURT:  All right.

⁻:42:00 25            Mr. Stolper.

SACR 06-129-AG - 03/03/2008

6

15:42:01 1          MR. STOLPER:  Just the letters from the victims,

15:42:02 2   your Honor, which I believe the Court has.

15:42:06 3          THE COURT:  Oh, my goodness.  Thank you for

15:42:07 4   reminding me.  Yes, I have received -- and let's just say

15:42:13 5   voluminous letters from the victims.

15:42:16 6          Has the government provided those letters to

15:42:18 7   Mr. Showalter?

15:42:20 8          MR. STOLPER:  Your Honor, the government

15:42:21 9   requested the Court provide those letters to make sure we

15:42:24 10  are all on the same page, and as I understand it, that did

15:42:28 11  happen.

15:42:29 12         THE COURT:  Yes.  And, in fact, Mr. Showalter's

 :42:31 13   papers, I think, reference some of those letters.

15:42:34 14         All right.  Have all parties received the material

15:42:38 15  from the probation office in sufficient time to review and

15:42:43 16  discuss them?  Mr. Stolper?

15:42:46 17         MR. STOLPER:  We have, your Honor.

15:42:46 18         THE COURT:  Mr. Ezekiel?

15:42:48 19         MR. CORTEZ:  Yes, sir, we have.

15:42:49 20         THE COURT:  All right.  Let's get to the issue of

15:42:50 21  the calculation of the correct guideline range.  The

15:42:56 22  probation office, as I understand it, has an offense level

15:43:01 23  of 33, a criminal history category of 1, resulting in a

15:43:05 24  guideline range of 135 to 168 months.

 :43:12 25          Mr. Stolper, is that where the probation office is

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

SACR 06-129-AG - 03/03/2008

7

15:43:16  1    on this?

15:43:17  2               MR. STOLPER:  It is, your Honor.

15:43:17  3               THE COURT:  And where is the government on the

15:43:19  4    correct guideline calculation?

15:43:20  5               MR. STOLPER:  The government concurs with the

15:43:21  6    range, your Honor.

15:43:23  7               THE COURT:  All right.  Mr. Ezekiel.

15:43:26  8               MR. MILLER:  Your Honor, Ken Miller, if I may be

15:43:28  9    heard on this issue briefly.

15:43:30 10               THE COURT:  You certainly can, Mr. Miller.

15:43:30 11               MR. MILLER:  Thank you.

15:43:31 12               THE COURT:  Why don't you stand at the lectern.

15:43:33 13               MR. MILLER:  Yes, your Honor.

15:43:36 14               I would like to just focus on four offense levels

15:43:41 15    that are included within the probation's calculation.  It is

15:43:46 16    the -- for starters, the additional two levels for the

15:43:51 17    number of victims, there is a two-level enhancement for more

15:43:56 18    than 10 victims, and there is a four-level enhancement for

15:44:03 19    more than 50 victims.  Once the Court and probation get out

15:44:06 20    to saying there is more than 50 victims, they are outside of

15:44:11 21    the plea agreement.

15:44:12 22               Now, Mr. Showalter has repudiated the plea

15:44:14 23    agreement, but the Court's denied our motion to withdraw.

15:44:18 24    So to the extent that the Court is relying on that,

15:44:20 25    obviously we object.  But regardless, 50 victims, there has

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

SACR 06-129-AG - 03/03/2008

8

15:44:27 1   to be additional evidence to get to 50 victims.  You can't

15:44:30 2   simply rely on the plea agreement.

15:44:34 3         When you count up the number of victims that are

15:44:36 4   listed in the presentence report, I believe there is 18.  If

15:44:41 5   you count up the number of victims that testified -- if you

15:44:45 6   add in the people that testified at the last hearing, I

15:44:47 7   think that's up to 23.

15:44:49 8         But no matter how you look at it, the government

15:44:52 9   has not shown that there are more than 50 victims, and I

15:44:56 10  don't think the Court can infer that there are more than

15:45:00 11  50 victims from the fact that High Park Investment had over

15:45:05 12  117 investors or lenders, because a lot of those investors

:45:10 13  or lenders claimed that they were not victims.

15:45:14 14        If you look at the letter from Tom Cavette

15:45:15 15  (phonetic), which is listed in the presentence report, he

15:45:21 16  goes through it and he says, "I represent 54 people.  We've

15:45:25 17  invested $9 million, and Mr. Showalter has done all of these

15:45:29 18  good things."

15:45:30 19        I submit that there is insufficient evidence for

15:45:32 20  this Court to impose four levels, rather than two, for the

15:45:37 21  number of victims.

15:45:39 22        As to the amount of loss, the plea agreement

15:45:42 23  says -- and this is the other two points that I would like

15:45:44 24  to address.  The -- under 2B1.1, the offense level goes up

:45:51 25  based on the amount of loss.  If it's -- in the plea

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

SACR 06-129-AG - 03/03/2008

9

15:45:54 1   agreement, there is a minimum there, it's 1 million; and if

15:45:57 2   the Court were to find a 1 million loss, there would be

15:46:00 3   certain offense levels that are added.  Once you are past

15:46:03 4   2.5 million, it goes up again.  And once you are past

15:46:06 5   7 million, it goes up again.

15:46:09 6          If you add up the amount of loss from the victims

15:46:13 7   identified in the presentence report, you are under

15:46:16 8   3 million.  If you add in the losses from the last hearing

15:46:24 9   we had in December, from the people that spoke, that gets

15:46:27 10   you to about 3.7 million.  You are still not up to the

15:46:31 11   7 million that you need to in order to have the -- what is

15:46:37 12   it, from the PSR, the 20-level, offense level bump.  If you

5:46:43 13   are between 2.5 million and 7 million, it should only be an

15:46:48 14   18-offense level bump.

15:46:50 15          So my point here today, without waiving anything,

15:46:53 16   just looking at what's in --

15:46:54 17          THE COURT:  Let me state for the record --

15:46:56 18          MR. MILLER:  Yes, your Honor.

15:46:57 19          THE COURT:  -- nothing will be waived.  I

15:46:59 20   understand the position you are in.  So that goes for all of

15:47:01 21   the statements you will be making.

15:47:03 22          MR. MILLER:  Thank you, your Honor.

15:47:04 23          Then with that said, I would just point out that

15:47:07 24   looking at the PSR, it doesn't justify more than 50 victims;

5:47:10 25   looking at the PSR, it does not justify more than $7 million

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

SACR 06-129-AG - 03/03/2008

10

| | | |
|---|---|---|
| 15:47:15 | 1 | loss.   The only way that you get to that is if you assume |
| 15:47:18 | 2 | that all 117 lenders -- investors are victims, and the |
| 15:47:24 | 3 | record does not bear that out. |
| 15:47:26 | 4 | And with that, your Honor, I would submit. |
| 15:47:29 | 5 | THE COURT:  All right.  So if I'm hearing you |
| 15:47:31 | 6 | right, you are suggesting certainly a criminal history |
| 15:47:36 | 7 | category of 1. |
| 15:47:38 | 8 | MR. MILLER:  Yes, your Honor. |
| 15:47:39 | 9 | THE COURT:  And an offense level of? |
| 15:47:41 | 10 | MR. MILLER:  Twenty-nine total. |
| 15:47:42 | 11 | THE COURT:  All right.  Mr. Stolper, Mr. Miller |
| 15:47:50 | 12 | has concisely framed the issue as to amount of loss and |
| 15:47:55 | 13 | victims. |
| 15:47:59 | 14 | MR. STOLPER:  Your Honor, Mr. Miller's arguments, |
| 15:48:02 | 15 | respectfully, make a faulty assumption, the assumption |
| 15:48:06 | 16 | that -- |
| 15:48:07 | 17 | THE COURT:  I'm sorry. |
| 15:48:08 | 18 | MR. STOLPER:  Mr. Miller arguments suffer from a |
| 15:48:11 | 19 | faulty assumption. |
| 15:48:12 | 20 | THE COURT:  Okay. |
| 15:48:12 | 21 | MR. STOLPER:  Mr. Miller's arguments suffer from |
| 15:48:15 | 22 | an assumption that High Park was not a scam, and |
| 15:48:19 | 23 | unfortunately for the victims in this courtroom, it was. |
| 15:48:22 | 24 | And as a result, the money that those people paid into |
| 15:48:25 | 25 | High Park was taken from them, from the defendant, under |

SACR 06-129-AG - 03/03/2008

11

15:48:28 1   false pretenses.  That's what he pled guilty to, whether he

15:48:32 2   repudiates it or not.

15:48:33 3        As a result, those folks are all victims.  Those

15:48:37 4   folks' money are all losses.  Mr. Miller has said that this

15:48:44 5   is in the PSR, that is in the PSR.  That is not entirely

15:48:49 6   true.  The PSR has an addendum, and that addendum lists

15:48:53 7   every victim, every amount of money they were victimized

15:48:56 8   for.

15:48:58 9        For defendant to get up here and say that those

15:49:02 10   people aren't victims because they haven't come forward and

15:49:05 11   complained specifically, is not the definition of a victim

15:49:10 12   under the guidelines, it's not how High Park worked.

15:49:14 13        I submit that every one of the people who put

15:49:18 14   money into High Park did so based upon the defendant's false

15:49:22 15   and fraudulent representations.  That's what the defendant

15:49:25 16   pled guilty to.  As a result, they are all victims, and the

15:49:28 17   money they paid in is all loss.

15:49:32 18        One other point just to draw some clarity for the

15:49:34 19   Court, the defendant acknowledged that there are at least 10

15:49:38 20   victims.  The one thing I didn't hear Mr. Miller do was

15:49:42 21   distinguish why the people who were mentioned by name in the

15:49:46 22   text or the beginning part of the PSR and not at the end

15:49:50 23   part of the PSR, how those are different, why those -- why

15:49:54 24   some are considered victims in Mr. Miller's way of looking

15:49:54 25   at the world, and others are not.

15:49:56  1          The truth here, your Honor, is quite simple:

15:49:59  2   High Park was a scam.  The defendant obtained money from

15:50:03  3   these folks under false pretenses.  They are all victims.

15:50:06  4   It is all loss.

15:50:08  5          Unless the Court has questions, I --

15:50:10  6          THE COURT:  Yes.  Will you supplement the record

15:50:12  7   by stating the -- I believe it was the range of victims as

15:50:17  8   set forth in the plea agreement.

15:50:19  9          MR. STOLPER:  It was -- there is actually two

15:50:21 10   points, your Honor.  The plea agreement sets forth more than

15:50:24 11   10 victims.  But the plea agreement's an open-ended

15:50:26 12   agreement.  The parties agree that this is the baseline

   :50:29 13   amount of offense -- the baseline offense level, and the

15:50:32 14   parties are free -- both parties are free to argue for

15:50:36 15   additional and for -- to argue for additional offense

15:50:38 16   level -- excuse me, additional adjustments and departures as

15:50:41 17   appropriate.

15:50:42 18          And so for Mr. Miller to say that the plea

15:50:45 19   agreement doesn't contain that, he's right; but it does

15:50:48 20   contain a provision wherein the parties are allowed to argue

15:50:52 21   for additional loss, additional victims and additional

15:50:56 22   offense level characteristics.

15:50:57 23          I would also note for the Court that the plea

15:50:59 24   agreement also sets forth a leadership adjustment of two

   :51:02 25   levels, which the government is agreeing not to seek in this

15:51:04 1    case largely because of a lack of support for it in the PSR.

15:51:09 2    Certainly it would be in our rights to do so, but as ever,

15:51:12 3    your Honor, the government tries to, the best we can, get it

15:51:16 4    right.  And to the extent that the defendant was willing to

15:51:18 5    agree to that as a leadership enhancement, that wasn't borne

15:51:21 6    out by probation.  We are walking away from that.

15:51:25 7            So in terms of the total amount of difference

15:51:27 8    between what the probation office is asking for and what the

15:51:31 9    plea agreement calls for, it's actually a four-level

15:51:34 10   difference, your Honor.  Three of those levels comes from

15:51:36 11   acceptance of responsibility.

15:51:38 12           THE COURT:  Understood.

:51:39 13            Now, the four-level increase requires 50 or more

15:51:43 14   victims, correct?

15:51:44 15           MR. STOLPER:  It's actually only, as I understand

15:51:45 16   it, a two-additional level.

15:51:48 17           THE COURT:  The total of four requires --

15:51:51 18           MR. STOLPER:  Fifty or more.

15:51:51 19           THE COURT:  I understand your point, but it

15:51:51 20   requires --

15:51:52 21           MR. STOLPER:  That's correct, your Honor.

15:51:54 22           THE COURT:  It requires 50 or more.  And the claim

15:52:00 23   here is how many victims; 117?

15:52:04 24           MR. STOLPER:  I actually haven't sat down and

:52:06 25    counted up the number of that --

15:52:08 1          THE COURT:  I may be looking at an older document.

15:52:10 2    I'm looking at the October 29th document, but it's

15:52:14 3    substantially more than 50, correct?

15:52:17 4          MR. STOLPER:  It's over 100, your Honor.

15:52:19 5          THE COURT:  All right.  Anything further,

15:52:20 6    Mr. Stolper?

15:52:22 7          MR. STOLPER:  Not on the offense level, your

15:52:23 8    Honor, no.

15:52:24 9          THE COURT:  From the defense, anything further on

15:52:26 10   the guideline calculation?

15:52:28 11         MR. MILLER:  Simply, your Honor, that Mr. Stolper

15:52:30 12   has the burden of proof on this case.  It is not incumbent

:52:35 13   upon us to come in and show why one group of investors is

15:52:38 14   different from another group of investors.  But, in fact,

15:52:38 15   the PSR at paragraphs 26 and 27 talks about how one group of

15:52:44 16   investors is, in fact, different.

15:52:46 17         And we also had previously submitted information

15:52:49 18   undermining the existence of a fraud at all.  And so we've

15:52:54 19   done our best to show that a number of these victims -- a

15:52:57 20   number of these people do not consider themselves victims

15:53:00 21   and have not claimed to be victims.  And because it is the

15:53:06 22   government's burden on this issue, I would just say they

15:53:11 23   have not met it, and submit.

15:53:13 24         THE COURT:  All right.

:53:14 25         Mr. Stolper, what is your burden on this issue?

15:53:17 1          MR. STOLPER:  Your Honor, it's the preponderance

15:53:18 2  of the evidence standard, and it's met by the defendant's

15:53:21 3  plea agreement and the information provided by the

15:53:22 4  probation office, namely that the defendant agreed that

15:53:26 5  High Park was a fraud, and that these folks were investors

15:53:29 6  in High Park.

15:53:30 7          It's like essentially another Ponzi scheme, your

15:53:33 8  Honor, the money that goes in that didn't come out, and it

15:53:36 9  all went in under false pretenses.  I don't think there is

15:53:4010  any allegation here that the, quote-unquote, "nonvictims"

15:53:4411  were not -- there is no evidence to the contrary.  The only

15:53:4812  evidence that exists is the probation report as well as the

:53:5113  plea agreement.

15:53:5214          THE COURT:  All right.  Thank you.

15:53:5315          The Court is going to find that the correct

15:53:5616  guideline calculations are as follows:

15:54:0017          Offense level of 33, criminal history category of

15:54:0418  1, giving the range of 135 to 168 months.

15:54:1119          Let me just state what the significance of that

15:54:1420  is.  In sentencing in federal court, the first step is to

15:54:1921  determine what the offense level is, and that's based on

15:54:2222  what went on in the crime.

15:54:2923          Let me get closer to the microphone.  The -- in

15:54:3624  sentencing in federal court, the first step is to determine

:54:3925  the guideline range.  To do that, we first have a discussion

15:54:43 1    about what the exact nature of the crime is.  That's what

15:54:46 2    you've been hearing here.  For larger amounts, the offense

15:54:52 3    level gets larger.  For a higher number of victims, the

15:54:56 4    offense level gets higher.

15:54:59 5            Then once you determine the offense level, the

15:55:02 6    defendant's criminal history is examined, and there are

15:55:08 7    various levels reflecting the defendant's criminal history.

15:55:12 8    So what we've just done is calculate the offense level at 33

15:55:15 9    and the criminal history at 1.

15:55:19 10           The next thing we do in federal sentencing is to

15:55:25 11   determine a proper sentence, and here we will hear from

15:55:30 12   defense counsel.  We'll hear from the defendant, if he

:55:35 13     wishes.  We'll hear from the government's counsel, and we'll

15:55:38 14   also hear from any victims in this courtroom that want to

15:55:41 15   speak to this issue.

15:55:43 16           Now, when we had our hearing previously, a number

15:55:46 17   of people came forward.  In fact, I recognize your faces out

15:55:49 18   there right now.  I believe this gentleman was here with his

15:55:52 19   relative.

15:55:54 20           But in any event, if any of you wish to speak,

15:55:58 21   you'll be given an opportunity to do that.  There is a good

15:56:02 22   number of people in the courtroom, and so we can't let you

15:56:05 23   speak all day.  But I find that usually people are brief and

15:56:10 24   to the point in what they have to say.

:56:12 25             So in the -- now, to determine a proper

15:56:16  1    sentence -- I actually think it might be best if we hear

15:56:22  2    first from the victims, and that will give everyone an

15:56:26  3    opportunity to comment upon what the victims have to say.

15:56:31  4    And so with that, I'm going to ask if any of you out there

15:56:36  5    in the courtroom wish to come forward and make any

15:56:38  6    comments.

15:56:39  7              And there is a hand up.

15:56:40  8              Please step forward, sir.

15:56:43  9              What we are going to do is just like we did last

15:56:46 10    time --

15:56:46 11              And actually, Mr. Stolper, if you want to go to

15:56:51 12    the back of the court and just see who else might want to

:56:55 13    speak.

15:56:56 14              MR. STOLPER:  Okay.

15:56:56 15              THE COURT:  All right.  With that, sir, you've

15:56:58 16    come forward.  And I'm going to put a time limit of four

15:57:05 17    minutes on what people may say, because I see a number of

15:57:08 18    hands up there, sir, and so try and keep within the four

15:57:12 19    minutes.

15:57:13 20              MR. STOLPER:  Your Honor, just so the Court knows,

15:57:14 21    I count three victims that would like to be heard today.

15:57:18 22              THE COURT:  Pardon?

15:57:18 23              MR. STOLPER:  I count three victims that would

15:57:18 24    like to be heard today.

  :57:19 25              THE COURT:  All right.  So go ahead, sir.  First

15:57:21  1    your name, sir.

15:57:22  2              MR. YARRINGTON:  My name is Al Yarrington.

15:57:26  3              THE COURT:  All right.  Could you spell it for our

15:57:27  4    court reporter here.

15:57:29  5              MR. YARRINGTON:  It's Albert, A-l-b-e-r-t,

15:57:32  6    Yarrington, Y-a-r-r-i-n-g-t-o-n.

15:57:42  7              THE COURT:  I'm sorry, could you spell that one

15:57:45  8    more time, last name.

15:57:46  9              MR. YARRINGTON:  Y-a-r-r-i-n-g-t-o-n.

15:57:50 10              THE COURT:  Yes, Albert L. Yarrington.  Go ahead,

15:57:55 11    sir.

15:57:56 12              MR. YARRINGTON:  Your Honor, I wear hearing aids,

 :57:59 13    too, so sometimes I get a little loud because I'm trying to

15:58:03 14    hear myself sometimes.

15:58:05 15              THE COURT:  That's all right.

15:58:06 16              MR. YARRINGTON:  I'm an investor with High Park, I

15:58:08 17    was, and I was shown the property and --

15:58:11 18              THE COURT:  Was your investment $50,000?

15:58:13 19              MR. YARRINGTON:  $50,000, yes, sir.

15:58:16 20              THE COURT:  Yes.

15:58:17 21              MR. YARRINGTON:  And I've been an investor in real

15:58:20 22    estate for 30 years.  I'm 75 years old, and I think I know a

15:58:25 23    good investment when I see one.  But there's times that in

15:58:32 24    all walks of life you run into people, and you can be

 :58:37 25    frauded by them or -- and so this happens.

| 15:58:40 1 | And in this case here, I know that there is over a |
| 15:58:46 2 | hundred people that's been -- their money has been taken |
| 15:58:52 3 | away from them from Mr. Showalter sitting over here on my |
| 15:58:57 4 | left.  And I'm only -- in his pleadings, his attorney's |
| 15:59:03 5 | pleadings for -- to -- for bail, I object to that, your |
| 15:59:08 6 | Honor.  I think that he should -- he should pay for his |
| 15:59:14 7 | crimes.  And I understand he has a history of crimes of this |
| 15:59:18 8 | nature, and so I implore you to give him the maximum |
| 15:59:24 9 | sentence that's allowed under the law.  Thank you. |
| 15:59:26 10 | THE COURT:  All right.  Thank you, sir. |
| 15:59:31 11 | Let me just say, as the next gentleman walks |
| 15:59:34 12 | forward, Mr. -- is it Yarrington or Yarrington? |
| :59:37 13 | *(No audible response.)* |
| 15:59:38 14 | THE COURT:  Mr. Yarrington, Yarrington? |
| 15:59:41 15 | MR. YARRINGTON:  Yes, sir. |
| 15:59:42 16 | THE COURT:  Which is it, Yarrington or Yarrington? |
| 15:59:46 17 | MR. YARRINGTON:  Yarrington. |
| 15:59:46 18 | THE COURT:  Mr. Yarrington, you mentioned the |
| 15:59:48 19 | issue of bail.  That is something else we will be taking up |
| 15:59:51 20 | here today.  The issue on bail is whether the defendant be |
| 15:59:57 21 | given some time between the sentence today and when he goes |
| 16:00:01 22 | to jail, and you've responded to that.  The question is not |
| 16:00:07 23 | just bail.  It's whether he be given some time between today |
| 16:00:11 24 | and when he has to report. |
| 16:00:14 25 | Yes, sir.  Your name is? |

16:00:16 1          MR. MOTAMEDI:  Good afternoon, your Honor.  My

16:00:17 2   name is Kamyar Motamedi, K-a-m-y-a-r, and my last name is

16:00:26 3   Motamedi, M-o-t-a-m-e-d-i.

16:00:33 4          THE COURT:  All right, sir.

16:00:34 5          MR. MOTAMEDI:  Your Honor, I responded to the ad

16:00:38 6   in October of 2004 regarding a safe and sound and a very

16:00:46 7   promising investment from L.A. Times.  And it took me two

16:00:52 8   months to investigate, and I went to the Internet, and I

16:00:56 9   looked this gentleman up, and I went to their offices.  And

16:00:59 10  I went and looked through many different sites with his

16:01:05 11  agents, because I was interested to be placed on a second

16:01:08 12  deed of trust on a property that I thought would be

:01:10 13  suitable.  And after two months, they called me back; they

16:01:14 14  said, "Yes, we have found the right place for you, and this

16:01:18 15  is where it's going to be."

16:01:20 16         Little I knew that it took them over a year or so

16:01:25 17  to produce a deed of trust, under tremendous pressure from

16:01:31 18  me and others to see a deed -- a document that would show a

16:01:35 19  recorded deed of trust that we could hang our hat on.

16:01:40 20         And then it turned out that I was one of many

16:01:43 21  different people that was placed on that position.  Needless

16:01:47 22  to say, that is all gone and lost.  That was --

16:01:52 23         THE COURT:  Your investment -- was your investment

16:01:55 24  $100,000?

:01:56 25         MR. MOTAMEDI:  Yes.  That was my first investment.

16:01:58 1    When I came in to give my money for the first $50,000,

16:02:03 2    Mr. Showalter and his agents encouraged me to spend another

16:02:10 3    $50,000 because they have this even better deal that I could

16:02:14 4    not refuse.  And I foolishly went back and brought another

16:02:20 5    check for another $50,000 and with my two own hands, handed

16:02:25 6    it over to him.  And since then, I've regret that.  That was

16:02:29 7    the money that I got out of my equity line of credit from my

16:02:33 8    own residence.  And to this date, I am still paying the

16:02:38 9    price for it on a monthly basis.

16:02:41 10        I know a lot of it was my mistake because I just

16:02:45 11   got into this thing without really thinking clearly.  But

16:02:49 12   some of it is this gentleman's fault because I asked him, I

:02:53 13    said, you know, "I saw your name in Internet associated with

16:02:58 14   a different Ponzi game."

16:02:59 15        And he says, "Oh, this is all a misunderstanding.

16:03:02 16   Don't listen to these things.  Government is just bunch of

16:03:06 17   nonsense people, and they are after you for some

16:03:09 18   misunderstanding.  Don't worry about it.  We are going to

16:03:12 19   make a lot of money for you and your family," and that's it.

16:03:15 20        And I told him that I have two small children, you

16:03:18 21   know, and I can't just risk it.

16:03:20 22        He says, "Don't worry about it.  You are in good

16:03:23 23   hands."

16:03:23 24        I am here in front of you.  I'm asking for justice

:03:26 25    to the maximum extent possible.  Thank you for your time.

16

16

SACR 06-129-AG - 03/03/2008

22

16:03:30 1          THE COURT:  All right.

16:03:31 2          Any others?

16:03:36 3          Yes, ma'am?

16:03:41 4          MS. TIBAU:  Good afternoon, your Honor.  Thank you

16:03:43 5  for allowing me to address the Court once again.  My name is

16:03:46 6  Anita Tibau, T-i-b-a-u.

16:03:50 7          And since the last hearing, it has come to my

16:03:54 8  attention -- I have learned of other victims and their

16:03:58 9  stories, and they are so tragic.  And my passion for

16:04:02 10 justice, to see it served for all of these people -- some of

16:04:06 11 them I've met along the way, and some of them I've known --

16:04:09 12 compelled me to come back again to beg the Court, do not let

:04:13 13 this man out if he tries to appeal this -- and I'm sure that

16:04:17 14 he will -- on bond.  He is a menace to society.  He will

16:04:21 15 continue this.

16:04:21 16         He has taken money from the poorest people who

16:04:26 17 have put their life savings, old people who have now passed

16:04:30 18 away, and their families will never ever recover.  He is

16:04:34 19 going to continue on this path because that is the path that

16:04:37 20 he has chosen.  If he wanted to do the right thing, we

16:04:40 21 would not be here in this court today.  I implore the Court,

16:04:44 22 do not let this man post bond under any circumstances

16:04:48 23 because, again, you will find more people back in this court

16:04:50 24 again.

:04:51 25         Thank you very much.

SACR 06-129-AG - 03/03/2008

23

| | |
|---|---|
| 16:04:51 1 | THE COURT:  All right.  Thank you. |
| 16:04:54 2 | Anybody else? |
| 16:05:00 3 | Yes, sir? |
| 16:05:02 4 | MR. LIPPERT:  My name is Johann Lippert, |
| 16:05:05 5 | J-o-h-a-n-n L-i-p-p-e-r-t, and my wife, Edel. |
| 16:05:13 6 | MRS. LIPPERT:  I'm Edel Lippert, E-d-e-l |
| 16:05:13 7 | L-i-p-p-e-r-t. |
| 16:05:24 8 | THE COURT:  Right.  Mr. Lippert, welcome.  You |
| 16:05:26 9 | spoke before, as I recall.  You spoke at the last hearing. |
| 16:05:31 10 | MR. LIPPERT:  Yes. |
| 16:05:32 11 | THE COURT:  And you are welcome to speak again. |
| 16:05:33 12 | You are all welcome to speak again. |
| ₃:05:35 13 | MR. LIPPERT:  I will make it short again and put |
| 16:05:37 14 | the emphasis where it belongs, and that is my $200,000 -- I |
| 16:05:45 15 | sold my house and got the $200,000 to investing it to |
| 16:05:51 16 | supplement my income -- my retirement.  And I was promised a |
| 16:05:56 17 | second trust deed, which I got, but there were 10 people on |
| 16:06:00 18 | it.  Three months later I found out.  I did not know there |
| 16:06:05 19 | is such a thing.  And, of course, it was the house was so |
| 16:06:09 20 | over-encumbered, 10 people on one property.  You know, it |
| 16:06:13 21 | was three times over-encumbered.  And so I lost it.  It was |
| 16:06:17 22 | foreclosed, and so I lost my money.  And he's still not in |
| 16:06:21 23 | jail.  Thank you, your Honor. |
| 16:06:24 24 | THE COURT:  And, sir, you are 77, are you? |
| ₃:06:29 25 | MR. LIPPERT:  Almost. |

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

16:06:29 1          THE COURT:  Almost, okay.  Thank you.

16:06:36 2          MR. LIPPERT:  I'm 76.

16:06:42 3          THE COURT:  All right.  Anything further?

16:06:44 4          Yes, sir.

16:06:49 5          MR. HAMIDEH:  Thank you, your Honor, for giving me

16:06:50 6    the opportunity to come to the court.  Thank you.  My name

16:06:54 7    is Mayef Hamideh, M-a-y-e-f, first name; last name,

16:06:59 8    H-a-m-i-d-e-h.

16:07:04 9          I can't speak for everyone over there in back of

16:07:07 10   me.  I know everyone is suffering the consequences that this

16:07:11 11   Mr. Showalter did to all of us.  Maybe not talking enough --

16:07:15 12   is enough of what he did.  I'm a person that had $50,000,

:07:19 13     not even quite $50,000.  I had to get a loan from my brother

16:07:26 14   because I thought in faith -- I had a lot of faith in this

16:07:29 15   guy that -- the way he talked to you, he brainwash you, he

16:07:33 16   make it look the bad in a paradise.

16:07:36 17         He did many bad things before because his

16:07:39 18   background -- I check him out.  I checked the High Park

16:07:42 19   Investment with TRW, with the other sources, and nothing

16:07:47 20   came up because he had background from before the time that

16:07:51 21   had -- that they had knowledge on him.  And because of that,

16:07:55 22   I invested with this guy.  And even though when I went to

16:07:59 23   his office in Huntington Beach, the first office he had, he

16:08:02 24   mentioned to me something about having a policeman investing

:08:08 25     here.  He mentioned to me having powerful people investing