# ATTACHMENT C

1  Ezekiel E. Cortez
   CA Bar No. 112808
2  The Executive Complex
3  1010 Second Avenue,
   Suite 1850, San Diego, CA 92101
4  Tel (619) 237-0309: Fax (619) 237-8052
5  Lawforjustice@aol.com

6  Kenneth M. Miller CA Bar No. 151874
7  Bienert & Miller
   115 Avenida Miramar
8  San Clemente, CA 92672
9  Tel (949) 369-3700 Fax (949) 369-3701
   ken@bmattorneys.com
10 Attorneys for Defendant: Edward Showalter

**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
(HONORABLE ANDREW J. GUILFORD)**

| | |
|---|---|
| UNITED STATES GOVERNMENT, ) | Case No. CR SA 06-0129 |
| Plaintiff, ) | |
| v. ) | **DEFENDANT'S SENTENCING MEMORANDUM** |
| EDWARD SHOWALTER, ) | |
| Defendant. ) | **Date: October 29, 2007** |
| ) | **Time: 3:00 p.m.** |

TO: UNITED STATES ATTORNEY; ANDREW STOLPER, ASSISTANT UNITED STATES ATTORNEY; AND JOSEPH ABRAMS, PROBATION OFFICER.

Edward Showalter (hereinafter Mr. Showalter) hereby files his Sentencing Memorandum pursuant to 18 U.S.C. 3553(a) and *U.S. v Booker*, 543 U.S. 220 (2005) seeking the equivalent of downward departures pursuant to the advisory Guidelines on various bases including substantial aid to the lenders/investors and because the recommended sentence is disproportionate to the alleged crime.

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

**1**

**Status of the Case**

Before Mr. Showalter unsuccessfully moved this Court to allow him to withdraw his guilty plea, there was a plea agreement between him and the Government. This agreement follows the Sentencing Guidelines now advisory under *Booker*. Mr. Showalter, however, repudiated the factual basis in the plea agreement when he sought to withdraw his guilty plea on April 16, 2007. The Court denied Mr. Showalter's Motion to Withdraw Guilty Plea and thus Mr. Showalter is forced to go forward with sentencing.

Mr. Showalter maintains that he is actually innocent and that the newly available/discovered evidence highlighted in his Motion to Withdraw Guilty Plea supports his position. Since Mr. Showalter has been left no choice but to move forward with sentencing despite his protests of innocence, Mr. Showalter hereby files this sentencing memorandum preserving all issues regarding withdrawal of his guilty plea for appeal. Mr. Showalter further herby invokes 18 U.S.C. 3553(a) and *Booker*.

The specific provisions of the plea agreement are as follows:

1. Base Offense Level, USSG § 2B1.1                           7
2. Loss Greater Than $1 Million, USSG § 2B1.1(b)(1)(I)        +16
3. More Than 10 Victims, USSG § 2B1.1(b)(2)(A)                +2
4. Violating Prior Injunction, USSG § 2B1.1(b)(8)(C)          +2
5. Leadership, USSG § 3B1.1(c)                                +2
6. Acceptance of Responsibility, USSG § 3E1.1                 -3

Total Adjusted Offense Level                                  26

Applicable Guideline Range                                    63 - 78 mos.

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

Mr. Showalter has a criminal history score of 0 and a corresponding Criminal History Category of I. The guideline range applicable before *Booker* is 63-78 months.

The parties jointly reserved the right to argue that additional specific offense characteristics and adjustments and departures are appropriate. The parties further acknowledged that there may be disagreements as to the appropriate amount of loss, victim and other adjustments.

**Advisory Guideline Factors**

*Booker* and 18 U.S.C. § 3553(a) make all defendant characteristics relevant to sentencing, including those characteristics previously considered not relevant under the now advisory Sentencing Guidelines. And, § 5K2.0 allows the court to consider extraordinary characteristics and circumstances as mitigating factors under 18 U.S.C. § 3553(a) when determining a sentence that departs from the sentencing guidelines.

Pursuant to 18 U.S.C. § 3553(a), in determining an appropriate sentence the following factors should be taken into account:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed to reflect the seriousness of the offense, deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with education, training, medical care or other correctional treatment;

3) The kinds of sentences available;

4) The need to avoid unwarranted sentence disparities among defendants with similar records who are guilty of similar conduct; and

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

**3**  Attachment C

     5)       The need for restitution.

**Post-Booker Factors for the Court to Consider Pursuant to 18 U.S.C. 3553(a)**

          **A. Nature and Circumstances of the Offence**

The nature and circumstances of the offense upon which Mr. Showalter is to be sentenced is in doubt. The Information at bar alleges that Mr. Showalter committed various fraudulent actions. For example, it alleges that Mr. Showalter "solicited, and caused High Park to receive over $15 million in investor's money;" that "the money was to be invested in specific, identified properties;" Mr. Showalter "acting with intent to defraud, diverted the money he obtained from investors for a variety of uses, including other investments, High Park operating expenses and personal use;" that "as a result of this scheme to defraud, Defendant victimized at least 10 people and caused a loss of at least $1 million;" and that "for the purpose of executing the above-described scheme to defraud, defendant EDWARD SHOWALTER caused to be transmitted in interstate commerce by wire communication the following wire transaction:" From Washington Mutual Bank, in California to Bank of China, in New York State, on June 6, 2005. The factual basis in the plea agreement alleges exactly the same things while the factual basis in the Presentence report not only reiterates these allegations, it further relies on the unreliable allegations made by the SEC against Mr. Showalter.

Mr. Showalter, however, contradicted and contested the factual basis in the plea agreement when he moved to withdraw his guilty plea on April 16, 2007. Mr. Showalter maintains that evidence that only became available after he pleaded guilty proves his innocence, whereas prior to pleading guilty he relied upon the government's representations regarding the facts and evidence in its case against him. Because Mr. Showalter's Motion to

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

**4**

Withdraw Guilty Plea and later Motion for Reconsideration were both denied by the Court, Mr. Showalter is being forced to proceed to sentencing for a crime in which he maintains his innocence.

That being said, the offense conduct relied upon by the government in charging Mr. Showalter and as may be relied upon by the Court in sentencing Mr. Showalter, has proved to be completely wrong, at worst, and unreliable at best. An example of how the offense conduct misses the mark can be seen in the government's very allegation of the crime - the wire fraud transaction allegedly carried out by Mr. Showalter on June 6, 2005. Evidence has become available since Mr. Showalter pleaded guilty to prove that Mr. Showalter *was not* the individual who actually performed this transaction. An eyewitness declaration attesting to this fact will be provided to the Court at a later date. However, with this information will make it clear that Mr. Showalter is being held to answer for an act and alleged criminal action that he did not commit.

Another example of the unreliability of the government's proffered offense conduct can be seen in its allegation that: "In addition to the above-described false representations that Showalter made to potential investors, he also failed to disclose to them that a final judgment and permanent injunction had been entered against him in a prior fraud case. Specifically, on May 15, 2001, a judgment was entered against Showalter in an enforcement action brought by the SEC alleging that Showalter orchestrated two fraudulent schemes to raise capital illegally [SEC v. Hollywood Trenz, Inc., Showalter, et al, Civil Action No. 98-1106 (D.D.C. 1998)]." (PSR, pg. 6, ¶ 15).

This "fact" is directly contradicted by some forty-five signed acknowledgments of the final judgment and permanent injunction in the "Disclosure of Information Relating to

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

**5** Attachment C

*Securities and Exchange Commission v. Hollywood Trenz, Inc., Edward R. Showalter*, Civil Action No. 98-1106 (RMU) (D.D.C. May 4, 1998)" signed by alleged victims in this case before each entered into contracts with High Park and Mr. Showalter. The list of alleged victims that signed this acknowledgment form is attached as Exhibit "A" along with two samples of the signed forms. Mr. Showalter is in the process of obtaining the other forty-three signed forms, which is not easy because the government seized all of his documents relating to High Park.

A final example of why the government's proffered offense conduct is unreliable can be found in the PSR where it alleges: "While meeting and speaking with potential investors, Showalter falsely represented to them that (i) they would receive guaranteed monthly returns in the forms of interest payments at a rate of 10% to 26% annually; (ii) their investments would be secured by trust deeds in priority only to the first mortgage lender on the properties; (iii) their investment money would be used only for purchasing, refurbishing, or developing the property named in the investment contract; and (iv) their investment principal would be returned in full when the property was sold." (PSR, p. 5, ¶ 14).

This "fact" has also been directly contradicted by one of the alleged victims in this case in a sworn declaration. Earl Coleman, one of the alleged victims in this case who loaned High Park $900,000.00 of his own money, declared, "I was never told that I would receive a guaranteed monthly return. In fact, ***I and many others knew very well*** that no monthly return would be received unless requested and that the sole properties that would provide for a monthly return were Bullhead and Mullholand." (Declaration of Earl Coleman, pg. 3, ¶ 12; emphasis added)   Mr. Coleman also declared, "I was aware that there were several lenders on each property in addition to myself." (Declaration of Earl Coleman, pg. 3, ¶ 14)   He

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

further declared - "I knew that my investment, and that of others, was being used to purchase and refurbish properties owned by High Park and pay costs associated with this type of venture such as overhead and payroll for the personnel necessary for this type of project. I knew that my investment would be used for these other purposes because I met employees that were working on the properties and knew that they would have to be paid in order for the project to be successful." (Declaration of Earl Coleman, pg. 3, ¶ 11) Finally, Mr. Coleman declared, "I received a profit from the sale of the Avenida Teresa property." (Declaration of Earl Coleman, pg. 3, ¶ 13)

Further eroding the Government's proffered but mistaken "facts" is the previously filed declaration of Scott Harmon. This declaration was filed as Exhibit C to Showalter's Motion to Withdraw Guilty Plea. At page 2, paragraph 9, Mr. Harmon states "I do not believe that Mr. Showalter was informed of how out of control things were getting at the job sites." The context of this sworn statement was how Mr. Showalter had delegated to John Staback, High Park's day-to-day construction projects. At paragraph 10, Mr. Harmon notes - "At this point it was taking up to six months to finish a house, but even though they were taking longer to complete, the projects were all still getting finished." Harmon adds at paragraph 11 "When the SEC entered the picture, they shut down all of our projects." According to Harmon, Showalter had to be away from the High Park projects because his time was consumed by a cement project. Additional facts regarding the cement project will be provided prior to sentencing. These additional facts will illuminate the very heart of this case and the possibly planted belief held by some lenders/investors that they were "defrauded" by Showalter.

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

Stark examples like these continue to develop and more and more continue to surface to date. This is partly because of bold *private* individuals motivated by greed who have conspired to put Showalter in jail at the cost of the truth, due process and the 6th Amendment right to effective assistance of counsel. More detail on this point will be provided to the Court when finalized.

For purposes of brevity, Mr. Showalter presents these examples to make the following point: Too many of the facts in this case have been disputed, contradicted and ultimately proved to be false. For this reason, an evidentiary hearing is critical so that the Court may objectively determine the facts as they truly exist in this case before proceeding to sentencing.

### B. History & Characteristics of Mr. Showalter

Mr. Showalter is a fifty-six-year-old self-made businessman with limitless energy and abilities in his many fields of knowledge. He has been working since he was a young teenager. Mr. Showalter was born in York, Pennsylvania to Edward Showalter, once a machinist at the Naval Ordinance Plant, and to Helen Showalter, a homemaker. He has one sister named Teresa.

After high school, Mr. Showalter attended Pennsylvania State University through an employer-sponsored program and graduated with a certificate in electronics technology. He has specialized training and skills as an engineer, project manager, heavy equipment operator, architectural design and construction, international shipping, international contracts and many other self-acquired skills. He also holds a patent for an ingenious cement bag/conveyor design. He currently works as a full-time consultant and project coordinator for United Cement Group in Laguna Hills, CA.

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

Mr. Showalter has been married three times. His first marriage resulted in two children: Janel Amberian who is 35-years-old and lives in Newport Beach, CA and Nicole Clark who is 32-years-old and lives in San Diego, CA. Mr. Showalter recently became a grandfather for the second time when his daughter Nicole had her second child. Mr. Showalter remains close with both of his daughters and his first and third wife.

Mr. Showalter currently lives in Aliso Viejo, CA with Anna Lisa Couchman, with whom Mr. Showalter has been cohabiting for the past three years. Together, Mr. Showalter and Ms. Couchman are raising Ms. Couchman's 12-year-old daughter from a prior marriage.

Mr. Showalter has suffered from skin cancer for the past fifteen years. Over the years he has had to undergo several surgeries to remove cancerous moles from his face, chest, back and arms. Most recently he has had surgery performed on both his back and his chest. According to Dr. Christopher Carlin, Mr. Showalter's dermatologist, Mr. Showalter has had at least 12 Basal Cell Carcinomas since 2003 that have been biopsied and treated by either Moh's surgery, wide excision, or electrodessication and curettage. Dr. Carlin shares that given Mr. Showalter's history, it is highly likely he will continue to generate new skin cancers requiring additional treatment. He also warns that if skin cancer is not properly addressed and treated, severe consequences could ensue such as local invasion, metastasis, and even death.

Aside from suffering from skin cancer, Mr. Showalter has diabetes and high cholesterol. He takes prescribed medications every day to deal with each of these conditions.

### C. Mr. Showalter Should Receive a Significant Downward Departure For a Combination of Circumstances pursuant to 5K2.0 To Acknowledge The Extraordinary Time, Effort and Taxable Income He Has Spent to Make All The Lenders Whole Again

"Under U.S.S.G. § 5K2.0 and its implementing statute, a departure is appropriate when 'there exists an aggravating or mitigating circumstance of a kind, or to a degree, not

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

adequately taken into consideration by the Sentencing Commission in formulating the guidelines.' 18 U.S.C. § 3553(b).  The defendant bears the burden to prove by a preponderance of the evidence that the circumstances of his or her case warrant a downward departure. *See*, *United States v. Anders*, 956 F.2d 907, 911 (9th Cir. 1992)." *United States v. Lipman*, 133 F.3d 726, 729-730 (9th Cir. 1998).  Mr. Showalter should receive a downward departure pursuant to § 5K2.0 because of the extraordinary efforts he has expended with his own time, money and labor in order to minimize and even eliminate the loss to all lenders of High Park since the SEC ceased High Park's operations.

According to the Ninth Circuit, "In determining whether a departure is warranted under U.S.S.G. § 5K2.0, a sentencing court 'may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law.' U.S.S.G. § 1B1.4. Except for those factors categorically proscribed by the Sentencing Commission as a basis for departure, e.g., race, sex, and national origin, the Guidelines 'place essentially no limit on the number of potential factors that may warrant departure.' *Mendoza*, 121 F.3d at 513 (quoting *Koon*, 116 S. Ct. at 2050)." *Lipman*, 133 F.3d at 730.

Here, Mr. Showalter has performed extraordinary actions, in the midst of an intensively stress-filled context, to help the lenders recover all of their losses.  When the SEC shut High Park down in 2005, seven High Park developed properties were in escrow: the 27091 Calle Juanita property; the 2055 Old Mammoth property; the 1706 Forest Trial property; the 713 Avenida Columbo property; the 24602 La Hermosa property; the 255 Via Ballina property; and the 424 Avenida Salvador property.  The profits from those seven properties would have been paid directly to the lenders on those properties.  However, the

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

SEC halted the sales of all seven properties. As a result, many lenders lost their principal loans and their profits.

Mr. Showalter had no control over the SEC's actions. He did, however, in October 2005 protest the cessation of sales and urged the SEC to allow the sales to proceed to avoid loss to the lenders. His requests fell upon deaf eyes. Therefore, Mr. Showalter pursued a different path to assure the lenders would not lose their money.

An order was entered in High Park's Chapter 7 bankruptcy abandoning substantially all of High Park's assets on March 27, 2007. At that time, the real property assets were at risk of being lost to foreclosure; there were substantial creditors including tax debt, unpaid vendors and more than $10 million in private party lenders who faced having their junior lien interests foreclosed upon by senior creditors. Mr. Showalter began, upon the request and with the participation of some lenders and their lawyers, to develop a plan of reorganization to save the properties from foreclosure and to provide the best chance for creditor claims to be repaid. To that end, on April 13, 2007 the Chapter 7 bankruptcy was converted into a Chapter 11 bankruptcy. Significantly, this was done at the request of lenders and their lawyers.

According to attorney Thomas G. Kieviet, Attorney for River Crest Estates, LLC. (hereinafter RCE) which was formed by 54 individual private party lenders of High Park who collectively loaned High Park *over $9 million* before the SEC investigation:

> After the Chapter 7 bankruptcy trustee abandoned most of the HPIG properties Showalter made efforts to protect and preserve these abandoned properties, at the request of RCE managers, by arranging for and funding the filing of a Chapter 11 reorganization bankruptcy that included the abandoned properties. The purpose and goal of the Chapter 11 bankruptcy is to enable a more orderly development and improvement of various properties to increase their value so they can be sold and generate more money to pay back private party lenders, including RCE members.

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

**11**  Attachment C

[Letter from Thomas G. Kieviet to Joseph Abrams dated July 23, 2007 (Kieviet Letter, provided separately.]

Attorney Kieviet adds:

> RCE was formed by interested private party lenders of HPIG for the principal purpose of taking action that would best enable its members to recover their loans from properties owned by HPIG. RCE members make up ***more than half of the total amount of all private party loans made to HPIG***. Therefore, RCE members make up a significant and substantial portion of the so-called "victims" of alleged securities law violations by Showalter.

Kieviet Letter, page 2, emphasis added.

As for the actions that Mr. Showalter has personally taken to help the lenders recover their loans to High Park since the SEC shut the company down, Attorney Kieviet explains:

> After the SEC receivership of HPIG was converted to Chapter 7 bankruptcy in July 2006 and at the request of RCE managers, Showalter took action to extend and save the rezoning of the 22-acre Bullhead property to enable it to be developed into individual manufactured housing lots. This greatly enhanced the value of the property over its prior zoning. Showalter has also taken action to cause the Bullhead property to be graded so it can be ready for development. Showalter is also involved in making arrangements to refinance a large first trust deed loan on the Bullhead property, which will create a more favorable opportunity to develop the property in the future.

Kieviet Letter, p. 2.

Perhaps most telling of Mr. Showalter's efforts thus far and the alleged "victims" expectations of Mr. Showalter's continuing efforts is Mr. Kieviet's statements that:

> Edward Showalter has taken good faith efforts that may enable RCE members to have a better opportunity to recoup their money. If his sentencing hearing goes forward in his criminal case and he is required to serve prison time, Showalter will no longer be in a position to continue with his efforts to protect, preserve and increase the value of properties that can generate

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

money to pay back RCE members and other private party lenders. If he is permitted to remain out of custody, he will be better able to reduce or eliminate any harm he allegedly caused to RCE members and other private party lenders.

Kieviet Letter, p. 2-3]

It has become public knowledge that Mr. Showalter has spent roughly $500,000.00 from his own taxable income to fund the Chapter 11 bankruptcy and to begin the development of the 22-acre Bullhead City property, all in the interests of making sure ***all lenders*** to High Park are repaid. This figure can be verified with the bankruptcy court because Mr. Showalter is required to submit a monthly accounting under the Chapter 11 reorganization plan documenting the funds he is contributing. The Bullhead City property is now in the hands of lenders and their lawyers and has an estimated value of $15-20 million dollars.

Pursuant to § 5K2.0 a departure is appropriate when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." Surely when the Sentencing Commission formulated the guidelines for wire fraud, it did not take into account the extraordinary personal time, taxable income and efforts that Mr. Showalter has expended to assure that all lenders are made whole again. This case presents extraordinary mitigation the likes of which is rarely seen in an alleged fraud case. For that reason, Mr. Showalter should be granted a departure pursuant to § 5K2.0.

### D. The Recommended Sentence Is Disproportionate to the Alleged Crime

It has been understood since *Booker* that the sentencing guidelines are merely advisory. The circumstances surrounding the crime, the characteristics of the particular defendant and any mitigating factors are to be taken into account as heavily as, if not more

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

**13**

Attachment C

than, the guidelines. The goal is to assure that punishment is proportionate to the crime. Also, the very preamble to 18 U.S.C. § 3553 commands –"The court *shall* impose a sentence sufficient**, but not greater than necessary**, to comply with the purposes set forth in paragraph (2) of this subsection…." (Emphasis supplied)

The guidelines, even while allowing for discretion, do not always take the particular offense conduct into adequate consideration thus essentially demanding that a particular defendant serve a punishment that is not warranted by his particular alleged conduct. Such is the case here. An adjusted base offense level of 26 under the now disputed plea agreement, and certainly the much higher adjusted base offense level of 33 suggested by the PSR, substantially overstates the conduct that Mr. Showalter actually engaged in and is disproportionate to his particular alleged crime. This is even more clear when considering all Mr. Showalter has done to help the lenders recover their losses which very likely will not only eliminate any loss in this case, but may over-compensate every one of the alleged victims here. While Mr. Showalter may be held accountable for his alleged conduct, he should not be held accountable for more criminal liability than is actually warranted.

For fairness in sentencing, and sentencing to be proportionate to the crime but no greater than necessary, Mr. Showalter requests this court to depart downward because the recommended sentence is disproportionate to the alleged crime.

**1. There Is *No* Factual Basis Upon Which to Impose Sentence**

Mr. Showalter denies guilt. Mr. Showalter has submitted substantial evidence that he is not guilty with his Motion to Withdraw Guilty Plea and herein. Mr. Showalter objects to this Court's reliance on his written plea agreement or his statements at the change of plea hearing. Imposition of any sentence violates Showalter's Sixth Amendment right to a jury

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

**14**

determination of the facts supporting his sentence if such is done upon a standard of proof less than the beyond-a-reasonable-doubt standard.

### 2. Mr. Showalter Is Not Responsible for Any Loss

The government bears the burden of proving all sentencing enhancements. *See*, *United States v. Ameline*, 409 F.3d 1073, 1086 (9th Cir. 2005) (en banc). Where, as here, "an extremely disproportionate sentence results from the application of an enhancement, the government may have to satisfy a 'clear and convincing' standard." *United States v. Staten*, 466 F.3d 708, 717 (9th Cir. 2006). "Where a fact relevant to sentencing is disputed, the district court must provide the parties a 'reasonable opportunity' to present information to the court." *See*, Fed. R. Crim. P. 32(c)(3)(A); USSG § 6A1.3(a).

#### a). **There is no "loss"**

Mr. Showalter contends that the Bullhead City project is currently worth between 15 and 20 million dollars. Declaration of Edward Showalter (Doc. No. 43-3) at ¶4. The Bullhead City project is now in the hands of lenders/investors. The value that the lenders are reasonably likely to receive will wipe out all alleged losses. *See*, *e.g.*, *United States v. Allen*, 88 F.3d 765, 770 (9th Cir. 1996) (value of collateral must be deducted from loss in fraudulent loan case). Accordingly, there is no loss.

#### b). **Neither the government nor probation has established a "loss"**

Every aspect of the PSR loss calculation is obviously hearsay. The hearsay probation relied upon is patently unreliable.

First, probation has not even attempted to place a value on any of the real property purchased with the lender's money and held on their behalf. But the existence of such properties is undeniable. In addition to the Bullhead City Project, there are other properties

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

that the PSR recognizes exist, but that probation does not even attempt to value. PSR ¶19 ("Mr. Joseph believes that Showalter controls the abandoned properties through a newly formed corporation that has filed to operate under Chapter 11 Bankruptcy."). Because the PSR does not deduct the value of collateral held on the lenders' behalf from its loss calculation, the loss calculation is meaningless.

Second, the hearsay statements of the disgruntled lenders (PSR ¶¶21-23) are unreliable. The disgruntled lenders' version of events was contradicted by the statements of the supportive lenders. PSR ¶24-27. The supportive lenders maintain they were *not* defrauded and are not victims. The PSR completely discounts the supportive lenders' version of events, even though the supportive lenders sustained the majority of the "loss." Moreover, the disgruntled lenders "had a personal grudge against Mr. Showalter" and have previously lied and contributed to their own losses. Harmon Dec. (Doc. No. 21-8) at ¶19. *See also*, Declarations of Jim Miyashiro (Doc. No. 21-14), Earl Coleman (Doc. No.21-12) and Scott Harmon (Doc. No. 21-8).

Third, the government has not produced any of the documents upon which the PSR's loss calculation is based. Accordingly, there is no basis to assess the reliability of the hearsay information. In other words, the information does not possess any indicia of reliability.

The PSR's hearsay-based loss determination is unreliable. This Court cannot rely on unreliable hearsay at sentencing. *See*, USSG §6A1.3(a); *United States v. Berry*, 258 F.3d 971, 976 (9th Cir. 2001); *United States v. Robinson*, 63 F.3d 889, 891 (9th Cir 1995). Therefore, the government has not met its burden of proving that the loss enhancements apply.

**3. Even If There Is a "Loss," Mr. Showalter Did Not Cause it**

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

**16** Attachment C

|    |                                                                                              |
|----|----------------------------------------------------------------------------------------------|
| 1  | Mr. Showalter is not responsible for any loss (even if the government can establish          |
| 2  | there was one).  As explained by Earl Coleman, and reported in the PSR, "the receiver and the |
| 3  |                                                                                              |
| 4  | SEC badly mismanaged the case and prevented investors from being able to mitigate damages    |
| 5  | or recover their money."  PSR ¶24.  *See also*, Declaration of Bruce Douthit (Doc. No. 21-10). |
| 6  | Moreover, the disgruntled lenders actually lied and contributed to their own "loss."  Harmon |
| 7  | Dec. (Doc. No. 21-8) at ¶19.  Rather than cause the loss, Mr. Showalter worked to protect the |
| 8  |                                                                                              |
| 9  | lenders.  PSR ¶24-27.  *See also*, Declarations of Jim Miyashiro (Doc. No. 21-14), Earl      |
| 10 | Coleman (Doc. No.21-12) and Scott Harmon (Doc. No. 21-8).                                    |
| 11 | A defendant is not responsible for losses caused by intervening, independent and             |
| 12 | unforeseeable criminal conduct.  *United States v. Hicks*, 217 F.3d 1038, 1048 (9th Cir. 2000). |
| 13 |                                                                                              |
| 14 | Accordingly, Mr. Showalter cannot be held responsible for losses caused by the lies of alleged |
| 15 | "victims."  Moreover, even if the SEC and bankruptcy trustees mismanagement of the           |
| 16 | properties was not criminal, it was still unforeseeably reckless conduct for which Mr.       |
| 17 | Showalter should not be held responsible.                                                    |
| 18 |                                                                                              |
| 19 | Additional material will be provided to the Court on these issues.                           |
| 20 |                                                                                              |
| 21 | **CONCLUSION**                                                                               |
| 22 | For the foregoing reasons, Mr. Showalter requests that this Court consider all of the        |
| 23 | factors in this case and impose a sentence which is both equitable and just under the        |
| 24 |                                                                                              |
| 25 | circumstances.                                                                               |
| 26 |                                                                                              |
| 27 | Respectfully Submitted,                                                                      |
| 28 |                                                                                              |
| 29 | Dated: October 15, 2007                         /S/ *Ezekiel E. Cortez*                      |
|    |                                                 Ezekiel E. Cortez                            |
| 30 |                                                 Attorney for Defendant                       |
|    |                                                 Edward Showalter                             |

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

**17**                                                                                          Attachment C

Ezekiel E. Cortez
CA Bar No. 112808
1010 Second Avenue, Suite 1850
San Diego, CA 92101
Tel (619) 237-0309 Fax (619) 237-8052
Attorney for Defendant: Edward Showalter

# THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### (HONORABLE ANDREW J. GUILFORD)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. CR SA 06-0129 |
| Plaintiff, ) | **DEFENDANT'S PROOF OF SERVICE** |
| v. ) | |
| EDWARD SHOWALTER, ) | |
| Defendant. ) | |

I, the undersigned, hereby declare as follows:

1. I am over 18 years of age, a resident of the County of San Diego, State of California, counsel for the Defendant and that my address is 1010 Second Avenue, Suite 1850, San Diego, CA 92101;

2. That today I served by electronic means the Defendant's Sentencing Memorandum on opposing counsel by causing to be delivered by e-filing to the Office of the Clerk; and that I mailed a copy to Defendant and co-counsel.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 15, 2007           /S/ *Ezekiel E. Cortez*
                                   Ezekiel E. Cortez

---

*Defendant's Sentencing Memorandum, U. S. v. Edward Showalter, CR SA 06-0129*

**18**                                                    Attachment C