UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

HONORABLE ANDREW J. GUILFORD, JUDGE PRESIDING; COURTROOM 10D

---

# CERTIFIED TRANSCRIPT

| | |
|---|---|
| United States of America, | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| | ) |
| | ) |
| vs. | ) No. SACR 06-129-AG |
| | ) |
| | ) |
| | ) |
| Edward Showalter, | ) |
| | ) |
| | ) |
| | ) |
| Defendant(s). | ) |
| | ) |
| | ) |
| | ) |

REPORTER'S DAILY TRANSCRIPT OF PROCEEDINGS
SANTA ANA, CALIFORNIA
WEDNESDAY, MARCH 30, 2011

DENISE PADDOCK
CSR 10199, CMRS, RMR, CRR
transcripts@ocrecord.com
U.S. DISTRICT COURT REPORTER

## A P P E A R A N C E S

**033011 DCCD GUILFORD 10D SHOWALTER**
**SACR 06-129-AG**

| | |
|---|---|
| **IN BEHALF OF THE PLAINTIFF:** | **Andrew D Stolper**<br>AUSA - Office of US Attorney<br>Criminal Division<br>411 West 4th Street, Suite 8000<br>Santa Ana, CA  92701-4599<br>714-338-3536<br>Email: USACAC.SACriminal@usdoj.gov |
| **IN BEHALF OF THE DEFENDANT:** | **H Dean Steward**<br>H Dean Steward Law Offices<br>107 Avenida Miramar, Suite C<br>San Clemente, CA  92672<br>949-481-4900<br>Email: deansteward@fea.net |

```
 1              SANTA ANA, CALIFORNIA; WEDNESDAY, MARCH 30, 2011
 2              THE CLERK:  SACR 06-129-AG: U.S.A. v
 3    Edward Showalter.
 4              MR. STOLPER:  Good afternoon, Your Honor.
 5              Andrew Stolper on behalf of the government.
 6              MR. STEWARD:  And, Your Honor, Dean Steward on
 7    behalf of Mr. Showalter.  He's present in custody.
 8              THE COURT:  All right.  Good afternoon to counsel
 9    and good afternoon to you, Mr. Showalter.
10              Who would like to tell me what they would like to
11    accomplish today?
12              MR. STEWARD:  Your Honor, I'll start.
13              THE COURT:  Okay.
14              MR. STEWARD:  What we're ultimately requesting is
15    that the court allow Mr. Showalter to withdraw his guilty
16    plea and set the matter for trial, and we would also be
17    requesting that the case go back to the wheel for random
18    reassignment here in the Southern division.
19              That's what we're asking for.
20              THE COURT:  All right.  Now -- all right, go ahead
21    and tell me why.
22              MR. STEWARD:  Yes, Your Honor.
23              I don't think the government can cogently argue
24    that they haven't breached the plea agreement.
25              It's a fundamental portion of the agreement itself.
```

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

2

1    The government recommended 16 months, higher than the low

2    end, and I just don't think they have any argument that they

3    did not breach.

4         The government's response to date has been:

14:36  5    Mr. Showalter breached, so it's okay if we breached.

6         First, as we set out in our reply, we don't believe

7    Mr. Showalter breached; but assuming for just a moment that

8    he did, the government still cannot breach the plea agreement

9    by unilaterally deciding that it has been breached.

14:37 10       There is case law, and we cited the *Guzman* case out

11   of the Tenth Circuit at Page 3 of our reply and, more

12   importantly, the terms of the plea agreement itself require

13   at Paragraph 17, Page 8 that there be a judicial

14   determination that a breach has occurred.

14:37 15       That didn't happen, obviously, when Mr. Showalter

16   was originally sentenced and therefore the government is not

17   relieved of their responsibilities in the absence of such a

18   determination by the court.

19        I believe Mr. Stolper's comment in his papers was

14:38 20  something to the effect of it would have been a wiser course

21   to have run this by the court, but the clear language in the

22   plea agreement says that the only time this plea agreement

23   can be officially, if you will, breached, is when the court

24   has made such a determination.  And, as we know, that has not

14:38 25  happened.

UNITED STATES DISTRICT COURT

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

3

1          In terms of the other portions of -- of -- of the

2    requests that we've made, *Santobello* is the basis for them,

3    for example, the need for a different court.

4          The *Santobello* case talks about appearances and

14:38  5    talks about just fundamental justice and, again, I think each

6    and every one of the cases that discusses *Santobello* says

7    it's not the fault or in any way imputed to the court; it's

8    the government's breach that's the problem.

9          THE COURT:  That's okay.  Don't worry about that.

14:39 10         MR. STEWARD:  Thank you, sir.

11         THE COURT:  Take your best shot.  I welcome you to

12   do so.

13         I'm glad you have obtained some clarification at

14   the Ninth Circuit that I'm prepared to respond to.  Don't be

14:39 15   shy.

16         MR. STEWARD:  Well, Your Honor, frankly, for me

17   it's somewhat easy in that I wasn't a part of all of this, so

18   I can throw rocks at defense counsel, Mr. Stolper, quite

19   easily.

14:39 20         THE COURT:  Throw them at the court too is what I'm

21   inviting you to do.

22         MR. STEWARD:  Thirty-two years of doing this,

23   Your Honor, the words will not come out of my mouth.

24         But, in any event, the bottom line is that the

14:39 25   government's breach is clear.  They have not given the court

UNITED STATES DISTRICT COURT

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

4

1       any theory to support the fact that they didn't breach, and

2       so, in our view now, the key is the remedy.  Our view is the

3       remedy is assignment to another court and the allowance of

4       the withdrawal of the guilty plea and Mr. Showalter would

14:40 5   then request a jury trial.

6               THE COURT:  All right.  Thank you, Mr. Steward.

7               Mr. Stolper.

8               MR. STOLPER:  Thank you, Your Honor.

9               The government's not going to go through and

14:40 10  identify all the various ways the defendant breached the

11      agreement beforehand.  Instead the government's going to

12      focus instead on the plain language of the plea agreement,

13      and that's Paragraph 16, which is different than the breach

14      part of the agreement.  And I'll just direct the court to

14:40 15  the -- there's different remedies associated with different

16      parts of the agreement.

17              In Paragraph 16 it sets forth the US -- the

18      United States attorney's obligations and it prefaces

19      Paragraph 16 by saying "if Defendant fully complies with all

14:40 20  of Defendant's obligations under this agreement, the USAO

21      agrees to do certain things.

22              That means, Your Honor, that the USAO's obligations

23      in Paragraph 16 only arise if Defendant complies fully with

24      all of Defendant's obligations under this agreement."

14:41 25            There is no requirement with respect to

UNITED STATES DISTRICT COURT

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

5

1  Paragraph 16 that the government requests the court to

2  declare a breach or asks the court to declare a breach, and

3  the reason that is the case, Your Honor --

4          THE COURT:  What about Paragraph 17, Line 20?

14:41 5         MR. STOLPER:  I'll come to that in a second,

6  Your Honor.

7          THE COURT:  -- Line 21.

8          MR. STOLPER:  And Paragraph 17 is the breach

9  language -- it's the breach provision, but there's different

14:41 10 remedies under different things the Defendant can do under

11 the plea agreement the parties signed.

12          Under Paragraph 16 all the government can do is not

13 recommend a low-end sentence.  That's the only thing that

14 happens.  Our obligation to recommend a low-end sentence, our

14:41 15 obligation to abide by our sentencing stipulations and our

16 obligations to recommend departure or acceptance of

17 responsibility, those don't arise.

18          The remedies under Paragraph 17, if there is a

19 judicially declared breach, are quite different.  At that

14:41 20 point in time, there is a whole set of things that can happen

21 to the defendant, including indicting him for additional

22 charges, tolling of statute of limitations, all types of

23 other remedies that are then triggered by a technical -- by a

24 breach of the agreement.

14:42 25          And so, Your Honor, coming back to the --

1    Paragraph 16, the only real question is did the defendant

2    fully comply with his obligations?

3                  THE COURT:  All right.  Okay.

4                  You're firmly embracing the first line of

14:42 5    Paragraph 16.

6                  MR. STOLPER:  Yes.

7                  THE COURT:  I can see why you might.

8                  Was that an argument in your papers?

9                  MR. STOLPER:  It was, Your Honor.

14:42 10                  THE COURT:  Show me where that -- show me where

11    you're embracing 16.

12                  MR. STOLPER:  Certainly, Your Honor.

13                  (Pause in the proceedings.)

14                  MR. STOLPER:  Page 5, argument, first letter A:

14:42 15    "The government's obligation to recommend a low-end sentence

16    never arose."

17                  And then I wrote, Your Honor:  "By the terms of

18    plea-agreement contract, the government's obligation to

19    recommend a low-end sentence arises only if, quote, the

14:43 20    defendant complies fully with all of Defendant's obligations

21    under the agreement.

22                  THE COURT:  And what line is that on, on Page 5?

23                  MR. STOLPER:  Page 5, Line 22.  It's our first

24    argument, Your Honor.

14:43 25                  THE COURT:  Well, I don't see you making -- it's

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

1    not significant, but I don't see you making this distinction,

2    this big distinction you're now making, between Paragraph 16

3    and Paragraph --

4             MR. STOLPER:  17.

14:43 5          THE COURT:  -- 17.

6             MR. STOLPER:  I probably should have made it more

7    crystal clear.

8             THE COURT:  Okay.  I got it.

9             MR. STOLPER:  But there is a very meaningful

14:43 10   distinction between those two things because of the remedies

11   that are triggered.

12             But, Your Honor, there's another way -- but that's

13   the government's first position which is -- and I don't --

14   contrary to what Defendant's arguing, I don't think there's

14:43 15   any legitimate dispute that the defendant breached the plea

16   agreement or didn't live up to his obligations in any number

17   of ways prior to any government sentencing recommendation,

18   and I can -- I won't go through them with the court but if

19   the court would like me to, I'm happy to.

14:44 20             That's the government's first position.

21             The second position is, let's assume, for the sake

22   of argument, that the court is now asked to determine whether

23   or not a breach of the plea agreement took place, and it

24   would have to determine on both sides, did the defendant

14:44 25   breach the plea agreement?  Did the government breach the

UNITED STATES DISTRICT COURT

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

1   plea agreement?

2         And it would also have to determine when did that

3   breach take place?  And the reason that's significant,

4   Your Honor, is if the court were to determine that the breach

14:44 5   took place prior -- by the defendant, prior to the

6   government's sentencing position, then not recommending a

7   low-end sentence, then, as a matter of contractual

8   interpretation, the government would have then been relieved

9   of its obligations.  And Mr. Steward is correct that it would

14:44 10  have been error for the government to have gone ahead and

11  breached the agreement without declaring a judicial --

12  without asking the court, and the court so declaring a

13  judicial breach, but as you play it through, Your Honor, as

14  you play the song through to the end, the outcome is exactly

14:45 15  the same.

16         If, in fact, the court determines that the

17  defendant breached the agreement, then the government is, in

18  fact, relieved of all of its obligations, and to the extent

19  the government failed to obtain judicial -- the judicial

14:45 20  declaration of a breach then and does so now, in the end the

21  result is the same, which is the government is relieved of

22  its obligations to recommend anything under this plea

23  agreement, and if that type of breach were declared, the

24  government would have the opportunity, if it wished, to bring

14:45 25  additional charges and -- and -- and have additional remedies

UNITED STATES DISTRICT COURT

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

9

1    as set forth in the breach portion of the plea agreement.

2            THE COURT:  So you have your "cake" of a guilty

3    plea and no trial, and "you're eating it too" without having

4    to recommend a low-end?

14:45  5        MR. STOLPER:  That's correct, Your Honor, because

6    this was our -- our "cake" was not just a "no trial," our

7    "cake" was certain specific stipulations that the defendant

8    was going to follow.

9            The plea agreement was not simply the defendant

14:45 10   waives his right to trial, it was a set of -- the defendant

11   agreed to certain things under the agreement, including

12   certain punishment.

13           He agreed that he committed certain amount of loss,

14   he agreed that he -- that he -- you know, he agreed to a

14:46 15   certain number of victims.  And the defendant, before the

16   government ever opened his mouth on any of these topics took

17   the position that there was no loss, that there were no

18   victims.

19           THE COURT:  Yes, but due to my ruling, you got

14:46 20   virtually all the benefit of that, of those promises made by

21   the defendant, paying only the cost of some extra work in

22   responding to his later claim of not guilty.

23           MR. STOLPER:  Well, Your Honor, it's -- it's -- and

24   of course the appeal on all those questions, but I understand

14:46 25   the court's point, which is --

1          THE COURT:  Well, wait.  What were the conditions

2     in the plea agreement concerning waiver of appeal?

3          MR. STOLPER:  The defendant waived his right to

4     appeal.

14:46  5          THE COURT:  Pardon?

6          MR. STOLPER:  The defendant did an appellate waiver

7     as well.

8          THE COURT:  But he did appeal?

9          MR. STOLPER:  Correct, Your Honor.

14:47 10          I don't want to get -- to get bogged down on this,

11     but the -- I guess the government's perspective on all of

12     this is what the government bargained for at the time the

13     defendant came in and pled guilty was certain sentencing

14     stipulations and certain other things.  And the government,

14:47 15     ordinarily, as the court knows, the parties come in and they

16     just say, these are our stipulations and this is where we

17     come out.

18          THE COURT:  Okay.  Well, speaking of appeal, why

19     aren't the arguments made by Mr. Steward deemed "waived" on

14:47 20     appeal?

21          MR. STOLPER:  Your Honor, I -- it's an interesting

22     question.

23          They were not raised on appeal, but that said, we

24     are now back in district court, and I think the district

14:47 25     court, again, is -- is facing a resentencing, and based upon

UNITED STATES DISTRICT COURT

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

1    that it's -- we couldn't find -- I couldn't find any law to

2    suggest -- and I'm not saying I couldn't find it -- but I

3    couldn't find any law to suggest that merely because he

4    didn't raise it in his initial appeal he's not allowed to

14:47 5    raise it when it's on remand back to the district court.

6            I -- I do think it's an interesting commentary on

7    the history of this case, Your Honor, that at the time we did

8    the sentencing and at the time of the appeal no one

9    legitimately thought that the government should be obliged to

14:48 10   recommend a low-end sentence given that the defendant took

11   the position that -- given that the defendant didn't follow

12   any of his agreements under the plea agreement.

13           I mean, I guess, going back to the court's earlier

14   question, it -- it -- from the government's perspective it's

14:48 15   fundamentally unfair that we're obliged to follow the

16   sentencing stipulations in the plea agreement but the

17   defendant can self-absolve.

18           And the fact that it turned out that the government

19   stipulations that we agreed to in the beginning were correct

14:48 20   is of little comfort to the government because instead of it

21   coming to this court as a joint recommendation, the

22   government, as the court -- as the court well knows, had to

23   fight tooth and nail on every part of this sentencing, and

24   that's -- you know, if you want -- if you want to consider

14:48 25   this from a "fairness" perspective, the defendant got to have

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

12

1   his cake and eat it too inasmuch as the defendant, you know,

2   was going to plead guilty and then did plead guilty, and then

3   the defendant got to back out of all of the sentencing

4   stipulations and put the government to its paces on all of

14:49 5   those questions, and the fact that he ultimately lost on

6   those questions is fairly irrelevant from the perspective of

7   the fairness of this agreement.

8          You know, these were sentencing -- sentencing

9   stipulations.  The defendant absolutely violated them and I

14:49 10   don't think it's fair for the defendant now to come into

11   court and say, even though I'm not obliged to follow the

12   sentencing agreements, you do.

13          And from the government's perspective we think that

14   Paragraph 16 pretty much controls on this question.

14:49 15          Like I said, I don't think it's a legitimate

16   question that he didn't fully comply with his obligations

17   under the agreement; and if that's the case, our obligations

18   on sentencing just never arose.

19          THE COURT:  Disparity is something I should always

14:49 20   be concerned about; correct?

21          MR. STOLPER:  Absolutely, Your Honor.

22          THE COURT:  And are you aware what this court did

23   in the case of Assistant Sheriff Jaramillo?

24          MR. STOLPER:  From what I read in the paper,

14:50 25   Your Honor, which may not be the best account.

UNITED STATES DISTRICT COURT

```
 1          THE COURT:  Well, for the record, I'm thinking
 2   about this case and issues of disparity.  Go ahead.
 3          MR. STOLPER:  In terms of sentencing or in terms of
 4   what we're doing here today?
14:50 5          THE COURT:  Sentencing.
 6          I believe there was a guilty plea and I believe one
 7   of your colleagues decided that Mr. Jaramillo was not true to
 8   his commitment and I believe your colleague did not make a
 9   low-end recommendation.
14:50 10          MR. STOLPER:  Yeah, Your Honor, I just --
11          THE COURT:  Okay.  Go ahead.
12          MR. STOLPER:  I'm sure you're correct, and I don't
13   feel comfortable speaking on that because I'm not privy to
14   all the facts and circumstances.
14:50 15          THE COURT:  Okay.
16          MR. STOLPER:  And I don't know if my colleague
17   declared a breach or not in that particular case.  But in
18   this case, under this plea agreement, and this is a matter of
19   contractual interpretation, our obligation -- the
14:50 20   government's obligation to recommend low-end only arises if
21   the defendant fully complies.  And unless the defendant --
22   and I think the record here is extremely -- is exceptionally
23   clear that he did not fully comply with his obligations,
24   didn't substantially comply with his obligations.  In his own
14:51 25   words he repudiated his obligations, and for the government
```

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

14

1    to now be required to recommend low-end, when the defendant

2    could basically walk away from the plea agreement is not

3    consistent with the language of the plea agreement, is not

4    fair and should not be the outcome.

14:51  5           THE COURT:  All right.  Anything further?

6           MR. STOLPER:  No, Your Honor.

7           Thank you.

8           THE COURT:  All right.  Any response, Mr. Steward?

9           MR. STEWARD:  Yes, Your Honor, if I may, briefly.

14:51 10           What I didn't hear there is Mr. Stolper's admission

11    that the government breached this plea agreement.  I don't

12    think he can say other than that they did.

13           His argument about Paragraph 16 and 17, I think, is

14    a little misleading and -- for contract reasons.  I have to

14:51 15    admit my contract training is rusty.  I think I last had

16    anything to do with contracts in about 1974 in the first year

17    of law school.

18           THE COURT:  Well, of course, you've had something

19    to do with contracts every time you engage in a plea

14:52 20    agreement, but not like contracts.

21           MR. STEWARD:  That's true, Your Honor.

22           And more importantly, here, in reading the other

23    cases that cite *Santobello*, there's a lot of discussions

24    about these, and I think it's clear that a plea agreement,

14:52 25    being a contract, has to be read as a whole, and what

UNITED STATES DISTRICT COURT

1    government counsel is trying to do is to parse this, which

2    gives it a meaning that I don't believe is a fair reading of

3    the entire agreement.

4         I believe that you have to read Paragraphs 16 and

14:52 5    17 together, along with all of the other paragraphs in the

6    agreement in order to understand what the parties agreed to.

7         And Mr. Stolper's terms of Paragraph 16 utterly

8    ignores Paragraph 17 and the judicial determination, because

9    if it was the way that Mr. Stolper urges, then Paragraph 17

14:53 10   and its need for judicial determination would be a nullity,

11   it would be something that would not be necessary at all, and

12   I think it's clear from the meaning of this, clear as it's

13   written, that 16 and 17 must be read together.

14        I do agree with Mr. Stolper about the potential

14:53 15   waiver.  I did not see any case that talked about that.

16        I think we're in sort of a unique factual posture

17   and that may be the reason.  But what we find now is that we

18   have sentencing set at the end of next month and the

19   operative document is still this plea agreement.  So at this

14:53 20   point, even if there was a waiver in the Ninth Circuit and a

21   waiver of prior counsel, we've brought it up now and it's

22   still an operating document, it's something that -- that's to

23   be considered at the time of sentencing, unless the court

24   allows us to withdraw from it.

14:54 25        THE COURT:  That's a good argument.

Case 8:06-cr-00129-AG   Document 130   Filed 06/27/11   Page 18 of 40   Page ID #:1165
033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

16

1              MR. STEWARD:  Although I don't really think --

2              THE COURT:  Although you don't escape waiver by

3       changing lawyers.

4              MR. STEWARD:  No.  I believe that's true,

14:54  5       Your Honor, you do not.

6              However, the keynote here is that once the Circuit

7       sent the case back down, as we approached sentencing, the

8       plea agreement is still in force and effect until the court

9       says otherwise, and so right now it's a document that we

14:54 10       think is defective and we're asking the court to allow us to

11       withdraw from.

12              And, Your Honor, beyond that, I would submit.  I

13       would particularly note, though, *Santobello* itself, which I

14       thought was a great -- a terrific Supreme Court case, and the

14:54 15       *Peglera*, P-e-g-l-e-r-a, case, which is a 1994 case out of the

16       Fourth Circuit, I thought was remarkably close in facts to

17       our case, including the government's breach, there being they

18       didn't recommend the low end as they were supposed to, they

19       recommended a higher sentence than that.

14:55 20              THE COURT:  All right.  Anything further?

21              MR. STOLPER:  Your Honor, just one --

22              THE COURT:  Please.

23              MR. STOLPER:  -- point in response to what

24       Mr. Steward said.

14:55 25              As I understand Mr. Steward's argument, if this

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

17

1    is -- whether it was waived or not, now that we're back in

2    district court, this is still the operative document.

3           If that's the case, Your Honor, then the

4    government -- if that's the theory under which the court's

14:55  5    going to proceed, then the government would respectfully

6    request that the court declare a breach of the defendant

7    based on his prior positions so it's no longer the operative

8    document.

9           As we stated before --

14:55 10    THE COURT:  You are declaring a breach; correct?

11    MR. STOLPER:  We are declaring a breach and

12    requesting the court to so find, yes, Your Honor, based on

13    the information set forth in our papers.

14           THE COURT:  Are you declaring a breach or

14:55 15    redeclaring a breach?

16           MR. STOLPER:  We are -- we did not previously

17    declare a breach because we didn't believe it was necessary

18    under Paragraph 16.

19           And going back to Mr. Steward's point, the idea

14:56 20    that 16 and 17, if not read together, are a nullity is simply

21    not consistent with the terms of those two paragraphs.

22    Paragraph 16 says what the government can do if the defendant

23    doesn't comply and Paragraph 17 sets forth additional -- I

24    won't say Draconian, but additional remedies available to the

14:56 25    government if the court declares and finds a breach.

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

18

1        And so I don't think that his -- his contractual

2   interpretation is correct.  Those two paragraphs have -- are

3   distinct and they have distinct meanings and they trigger

4   distinct things the government can and can't do.

14:56  5        But in terms of -- in going back to the court's

6   question about declaring a breach, we did not previously

7   declare a breach, and I think that, as we requested in our

8   papers, that the court should so find a breach based upon the

9   defendant's previous statements in the prior sentencing

14:56 10   proceeding and, I guess, the prior withdrawal proceeding.

11            THE COURT:  All right.  Anything further?

12            MR. STOLPER:  Nothing further.

13            THE COURT:  Is the matter submitted by both sides?

14            MR. STEWARD:  Yes, Your Honor.

14:57 15            MR. STOLPER:  Yes.

16            THE COURT:  Mr. Showalter, did you want to discuss

17   anything with Mr. Steward?

18            (Discussion held off the record.)

19            MR. STEWARD:  Your Honor, one final point.

14:57 20            THE COURT:  Sure.

21            MR. STEWARD:  The *Guzman* case out of the Tenth

22   Circuit is clear -- it's out of Circuit authority, but it's

23   clear that the US attorney's office cannot declare a breach

24   unilaterally.  And it makes a lot of sense and I would ask

14:57 25   the court to follow that as well.

UNITED STATES DISTRICT COURT

1       THE COURT:  Okay.  Is the matter submitted?

2       MR. STEWARD:  Yes, Your Honor.

3       THE COURT:  Submitted?

4       MR. STOLPER:  Yes.

14:57 5       THE COURT:  Well, I did find that the defendant did

6   breach the plea agreement.

7       I would have made that finding back at the time

8   prior to sentencing.  I do think there is a breach.  I think

9   applying contract law into this situation, as I am required

14:58 10   to do, leads to the conclusion that there was a breach by the

11   defendant.

12       For that reason and for the reasons we've heard

13   here presented today, I am going to deny the relief sought by

14   Mr. Steward.

14:58 15       I've also considered Mr. Steward's request that a

16   new judge be substituted for sentencing.  I've considered the

17   various reasons why there might be such a request, and I'm

18   going to deny that request.

19       I want to state a few thoughts here now as we

14:59 20   approach the upcoming sentencing.

21       Mr. Showalter, I've thought a lot about your case

22   since you brought your various motions for sentencing.  I've

23   thought a lot about your case and the sentencing hearing that

24   occurred.

14:59 25       I must say, I do recall there were lots of people

Case 8:06-cr-00129-AG   Document 130   Filed 06/27/11   Page 22 of 40   Page ID #:1169
033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

20

1    out there and they aren't there now.

2            I do feel that I have to think about the victims;

3    but, nevertheless, I've thought about the arguments you're

4    making.  I sometimes wonder if it is fair for us to hold you

14:59 5    to a plea agreement and penalize you when you want to retract

6    the plea agreement.

7            Later events that have occurred in this courthouse

8    that caused me to think more about what happened to you -- I

9    must say, though, that I remain convinced that I need to hold

15:00 10    you to your guilty plea, and there is a couple of reasons for

11    that.

12            One is that you made that guilty plea in my

13    courtroom when you were under oath, and you admitted to the

14    facts when you were under oath.  And in that plea we call it

15:00 15    a "plea colloquy."  You were told by me, you know, you're

16    under oath, and what you say is important.

17            And to my way of thinking when someone comes into

18    my court and makes a statement under oath, I need to hold

19    them to that statement.  I take seriously statements made

15:00 20    under oath.

21            Now, the reasons I made my ruling back then are set

22    forth, I think, in a written order I did -- I believe I did a

23    written order -- and that went up to the Ninth Circuit and

24    we've got the written order, but I want to tell you some of

15:01 25    my thinking on it.

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

1          The prior opinion is in the written order and I'll

2    stand by my written order; but there was a statement made

3    under oath -- subsequently, I sent the sheriff of

4    Orange County to jail for five and a half years for telling

15:01 5    someone to make a false statement under oath.  We had a

6    president who was impeached for making a false statement

7    under oath.

8          I take statements under oath seriously, and there

9    was an admission of the factual basis by you under oath in a

15:01 10    plea hearing which probably lasted at least half an hour and

11    included numerous references to the fact that you were under

12    oath.

13          So that's why I am sticking with the original

14    guilty plea.  But as we come up on sentencing, I will say I

15:02 15    think I'm the best person to evaluate the sentencing, and

16    I'll say, to reevaluate the sentencing in light of what the

17    Ninth Circuit has said.

18          I always appreciate it -- and I mean that

19    sincerely -- when the Ninth Circuit provides me with further

15:02 20    guidance on how I can do the appropriate job of sentencing.

21          So I've read the Ninth Circuit opinion, of course,

22    and I continue to think a lot about this case and I want to

23    do what's right in terms of sentencing.

24          I do think I am ultimately, again, the best

15:02 25    judge to do that, considering all the facts that have

UNITED STATES DISTRICT COURT

1    happened in this case.

2            So we have a date for sentencing; correct?

3            MR. STOLPER:  Yes, Your Honor.

4            THE COURT:  And what -- have counsel talked about

15:03 5    evidentiary prove-up?

6            I know you have submitted substantial papers

7    proving up what the Ninth Circuit found to be a shortcoming.

8            Have you and counsel talked about how that wants to

9    be handled?

15:03 10           MR. STOLPER:  We have not, Your Honor; but I'm sure

11    we will do so.

12            We can actually do that now if the court would

13    like.

14            THE COURT:  There's the prospects of

15:03 15    cross-examination.

16            MR. STOLPER:  Right.

17            THE COURT:  I'll leave it at that.

18            There's the prospects of cross-examination.

19            You don't have to discuss it now.  You know, make

15:03 20    sure, working with Ms. Bredahl, you set aside enough time.

21    This is obviously important.

22            Again, I'm grateful to have the Ninth Circuit tell

23    me where I need to make further factual findings.

24            And at the sentencing I will consider what evidence

15:03 25    you present, Mr. Stolper, and I will reconsider the overall

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

23

```
 1   milieu of this case in determining a reasonable sentence.
 2         Mr. Steward.
 3         MR. STEWARD:  Your Honor, if I may -- and this is
 4   probably by way of giving the court a heads up in terms of
 5   the timing of the sentencing.  We're about a month off, four
 6   weeks right now -- we have been having a lot of difficulty
 7   getting cooperation from individuals who need to be giving us
 8   some documentation, and the Reader's Digest version of what's
 9   going on is we have a list from the government, the FBI
10   agent, who called each one of the victims and then there is a
11   number to the right of it.  As I understand the FBI agent's
12   declaration, he called each one of those folks and said, did
13   you lose a hundred thousand dollars -- let's say,
14   Mr. Smith -- a hundred thousand dollars?
15         Mr. Showalter and I believe -- and we have some
16   significant evidence already -- that those numbers are
17   incorrect, that many of the victims in this case recouped
18   money, both directly and indirectly, and the FBI's loss
19   amount for each one of them is simply the gross amount that
20   they gave to the bankruptcy trustee back in 2006 or '07.
21         THE COURT:  It sounds to me you may want to have
22   the chance to cross-examine the FBI and put the entire bit of
23   evidence into doubt.  That would put it into doubt with me.
24         MR. STEWARD:  Yes, Your Honor; and it's actually
25   more significant than that in the sense that we believe the
```

1    victims received funds from at least three different sources.

2         First, is each one of the properties, as the court

3    will recall.  Let's just say they had a dozen liens on them.

4    At some point that property was sold and somebody got the

15:05 5    funds off of that, and so we believe in that way, that

6    manner, some of these folks got money and it was not

7    disclosed.

8         Second, at least two of the properties ended up the

9    victims owning the property; they got the property, and we've

15:06 10    been diligently searching property records on all 19 pieces

11    to try and determine exactly what happened.

12         Third was litigation directly involved in this case

13    which had to do with the escrow company.  The escrow company,

14    Gateway, and I think their subsidiary, Chapman Escrow,

15:06 15    conceded liability and paid out significant sums of money to,

16    perhaps, all of the investors, at least half of them for

17    sure.

18         We have subpenaed the settlement documents for the

19    four lawsuits involving Gateway, and I know government

15:06 20    counsel's argument will be you can't deduct that off of loss.

21    But after the *United States versus Crandall* case, we would

22    argue that you can and would, and Mr. Stolper is well

23    familiar with that case because he and I litigated it.

24         Anyway, the bottom line is that we believe there

15:07 25    are many victims who recouped money that must be deducted

1    from these numbers, and that will affect the guideline range.

2            Our plan, frankly, is to subpena probably four or

3    five of the investors who we know we can prove didn't -- did

4    not have the loss that they stated to the FBI; perhaps no

15:07 5    fault of their own, they just weren't asked the right

6    question.

7            And as the court knows --

8            THE COURT:  They were also probably angry, which

9    probably helps the position you're asserting.

15:07 10            MR. STEWARD:  I have experienced a great deal of

11    that, Your Honor, in representing Mr. Showalter in a very

12    short period of time.

13            Anyway --

14            THE COURT:  And that anger could lead to

15:07 15    exaggeration or, let's just say, not giving the benefit of

16    the doubt to Mr. Showalter.

17            MR. STEWARD:  Yes, Your Honor; and my point of this

18    story is that we have diligently tried to pull documentation

19    that can prove our position, and we're having trouble getting

15:07 20    it, frankly.

21            The subpenas that we've issued are not -- are not

22    bearing fruit the way I think they should.

23            THE COURT:  Well, they have the power of the

24    United States District Court and I'll do what I need to do to

15:08 25    enforce subpenas of this court.

UNITED STATES DISTRICT COURT

Case 8:06-cr-00129-AG   Document 130   Filed 06/27/11   Page 28 of 40   Page ID #:1175
033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

26

```
 1              MR. STEWARD:  Thank you, Your Honor.  I appreciate

 2       that.

 3              Perhaps I made the mistake of making the return on

 4       the sentencing date, and maybe that's why things are slow,

15:08 5  but I'm going to see if there aren't things I can do to speed

 6       it up.  And all of this is a prelude into saying that it may

 7       be that April 28th is too soon for us despite all of our

 8       diligent efforts to gather all of this material, because I

 9       believe it will have a significant impact on the guideline

15:08 10 range for Mr. Showalter, and as we've seen it's pretty

11       critical in this -- it's pretty critical in every case -- but

12       particularly critical in this one.

13              THE COURT:  So, Mr. Stolper, you just received a

14       Reader's Digest version of what the defense might do.

15:08 15        I wondered if they would be happy cross-examining

16       your FBI agent.  There's some hearsay issues there.  He now

17       apparently wants to call a random selection and put doubt.

18       So you've got that Reader's Digest version.

19              The long and the short of it, though, is he's

15:09 20 telling us the date may not be right.

21              What's your position?

22              MR. STOLPER:  A few things, Your Honor.

23              First of all, the question of loss has gone to the

24       Circuit and come back down.  I don't believe that we're going

15:09 25 to -- I don't believe it's proper to reopen that question.
```

```
 1              THE COURT:  Well, wait.

 2              Didn't the Circuit say we need a better prove-up?

 3              MR. STOLPER:  The Circuit said -- the Circuit

 4    remanded on the question of victim count.  The Circuit did

 5    not -- the Circuit found sufficient evidence on the loss.

 6              THE COURT:  Okay.  That's true.

 7              MR. STOLPER:  I don't believe -- I don't believe

 8    the loss question is in dispute.

 9              I don't believe it's -- the government has not

10    endeavored to reprove loss because that question was fully

11    litigated.

12              THE COURT:  I'm sorry.  I forgot that distinction.

13    They made the distinction between number and doubt.

14              Mr. Steward, you would agree with that, wouldn't

15    you?

16              MR. STEWARD:  I would agree that that's what they

17    ordered.  It was a general remand, not a specific remand, and

18    our position is everything's on the table right now.

19              THE COURT:  Okay.  I'm glad you reminded me,

20    Mr. Stolper, the distinction between the number of victims

21    and the amount of the loss.

22              MR. STOLPER:  And our position's going to be that's

23    the law of the case and it's not for -- to be revisited; it's

24    been fully and fairly litigated.

25              As to what the FBI agent --
```

1           THE COURT:  But let's stop there for a moment.

2           MR. STOLPER:  Sure.

3           THE COURT:  They said that whatever I relied on to

4      determine amount of loss was appropriate.

15:10  5           MR. STOLPER:  (Nodded head.)

6           THE COURT:  At the sentencing hearing, the original

7      sentencing hearing, Mr. Steward -- or was it Mr. Ezekiel?

8           MR. STOLPER:  Mr. Cortez and Mr. Miller.

9           THE COURT:  Ezekiel Cortez.

15:10 10           Mr. Cortez could have said we're going to attack

11      those figures concerning amount of loss, and he could have

12      done it at the sentencing hearing.

13           MR. STOLPER:  They did.

14           THE COURT:  Well, it kind of goes to this issue of

15:11 15      whether there has been a waiver or whatever.

16           Mr. Steward is now saying that's wide open and he's

17      going to attack that.

18           MR. STOLPER:  And I -- I understand that's

19      Mr. Steward's position.  The government position is

15:11 20      Mr. Miller and Mr. Cortez fully litigated the question of

21      loss and then they didn't like the judge's -- Your Honor's

22      decision and appealed that question, and the Ninth Circuit

23      determined that this court's determination of loss to be

24      correct.

15:11 25           I don't think that's open for revisit, regardless

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

29

 1    of whether it's a limited remand or a general remand.

 2            That's law of the case.  That question's been fully

 3    litigated and the Ninth Circuit has decided.

 4            If Mr. Steward wants to reopen that question, I

15:11 5    suppose he could make -- if there's any procedural hook to do

 6    it -- and I'm not saying that there is -- it would have to be

 7    perhaps in the form of a motion to reconsider, but even that,

 8    how can the Ninth Circuit reconsider its decision?

 9            But, Your Honor, that's -- that's a legal question,

15:12 10   and I want to -- until just now I wasn't aware we were going

 11   to be litigating loss, and so that's something that obviously

 12   we'll have to research and brief, because I'm quite sure that

 13   there's -- there's law on this question.

 14           In terms of the date, the government's position, as

15:12 15   the court knows for a long time, has been this -- this case

 16   was remanded, I believe, last summer, and we filed our

 17   sentencing position -- I can't remember the date, but I

 18   believe it was well over a month ago.

 19           The victims in this case are not here today,

15:12 20   Your Honor, I think, largely because this hearing's been

 21   shuffled around quite a bit, but I can represent that the FBI

 22   gets called frequently from victims asking to know what the

 23   status of this case is and when is Mr. Showalter going to be

 24   resentenced?

15:12 25           I don't have to tell the court there's a lot of

1      angry people out there as a result of Mr. Showalter's

2      conduct, and to deny those -- those folks, I think, are

3      entitled to some modicum of a speedy system, and I don't

4      think it's going to prejudice Mr. Showalter in the slightest

15:13  5   given that this case has been on remand for, I don't know,

6      eight months, something like that.

7            The final thing I'll just point out, Your Honor, is

8      that some of the arguments Mr. Steward is making is simply

9      not -- are going to make are simply -- the one that -- the

15:13 10   one that I heard that caught my ear was this idea that --

11     that the escrow company paid out.  They did.  The escrow

12     company was -- insurance company paid out because the victims

13     had a pretty good argument that they should have detected

14     Mr. Showalter's fraud and did not do so.

15:13 15         Whether it's insurance company money that pays out

16     or whether it's victims who are out the money, the money is

17     still gone as a result of Mr. Showalter's scheme to defraud,

18     and the fact that an insurance company pays out for it is --

19     is, under the law, including *US v. Crandall*, just is not an

15:14 20   offset to fraud.

21           THE COURT:  There is no collateral -- you're saying

22     there is a version of the collateral source rule in criminal

23     cases?  That's a civil concept.  We don't need to go there,

24     but --

15:14 25         MR. STOLPER:  You're talking over my head,

1    Your Honor; but the way loss works is, you know, if you steal

2    something from someone and they're lucky enough to be insured

3    for that loss --

4         THE COURT:  Another way of saying that, which is

15:14 5    said in the civil context, is that Mr. Showalter should not

6    be the beneficiary of the fact that someone diligently paid

7    insurance premiums over a certain amount of years?

8         MR. STOLPER:  Correct; and I guess my cruder way of

9    saying it --

15:14 10        THE COURT:  I'm not sure those same policies would

11   apply in a criminal case.

12        You cited a case, and maybe that takes care of it.

13        MR. STOLPER:  It's *US v. Crandall*, and I am privy

14   to that case, but it doesn't take care of it.

15:14 15        Anyhow, I think the question before us today is:

16   When are we going to go forward with sentencing?

17        The government's position is the defense has had

18   more than adequate time to prepare.  The issue as far as

19   Government's concerned is a question of victim count.  That's

15:14 20   the only issue we briefed to Your Honor because that's the

21   issue the Ninth Circuit said was infirm at the last

22   sentencing.

23        On that question, I don't think additional time is

24   necessary to prepare.  Mr. Steward isn't arguing those folks

15:15 25   that he called aren't victims; he's arguing that they may not

UNITED STATES DISTRICT COURT

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

32

1    have experienced the amount of loss that was already fully

2    litigated and briefed with the Ninth Circuit.

3              (Discussion held off the record.)

4              THE COURT:  Just for the record, that's a

15:15 5    translator who is usually here when we have people who need

6    translations, and I wondered if she thought we had a hearing

7    at 3:00 or something needing a translation.

8              Go ahead.

9              MR. STOLPER:  Just to finish up, Your Honor, the

15:15 10   question before the court, I think, is victim count.

11             I didn't hear anything in Mr. Steward's Reader's

12   Digest version that suggested that he had anything -- that

13   had a whole lot to say about victim count.

14             If we're going to have another fully opened

15:16 15   sentencing on stuff that's already been fully litigated and

16   briefed to the Ninth Circuit, then I suppose the government

17   will need more time -- more time as well because we'll have

18   to re-put on the entire sentencing again.

19             THE COURT:  Okay.  Issue of victim count.

15:16 20        MR. STOLPER:  Yes.

21             THE COURT:  What's your magic number?

22             MR. STOLPER:  More than 50.

23             THE COURT:  How many were here that day?

24             MR. STOLPER:  How many were here the day that the

15:16 25   court --

UNITED STATES DISTRICT COURT

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

33

1         THE COURT:  Sentenced.

2         MR. STOLPER:  Oh, I didn't bring that file,

3   Your Honor, but the answer is I don't know offhand.  I think

4   it was approximately 50, but I don't know.  I can't -- I

15:16 5   don't want to represent that to the court, because I didn't

6   count.

7         I can ask the FBI agent.

8         THE COURT:  Okay.

9         MR. STOLPER:  What I can tell the court is we've

15:16 10   gone -- we've filed our position on this.

11         I don't think this is a very complex factual

12   inquiry to determine who's a victim and who is not.

13         The law on it's very clear.  The folks who invested

14   money and didn't get some portion of it back are "victims"

15:16 15   under the law.

16         If that's what we're litigating, I don't think that

17   any time is necessary.

18         The government set forth its position.  Mr. Steward

19   has had ample time to review that position.  Now it's time to

15:17 20   resentence the defendant and move on.

21         THE COURT:  All right.

22         Mr. Steward.

23         MR. STEWARD:  I just want to note a couple of

24   things, Your Honor.

15:17 25         First, I've only been on this case for about

1    60 days.  It was remanded from the Ninth Circuit last summer.

2    Mr. Showalter has asked me many times, "Why didn't I have a

3    lawyer before this?"

4         There were problems with somebody CJA appointed

15:17 5    before me, other than that, I don't know, but none of it was

6    his fault.

7         And like I said, as for me, I've been on it 60 days

8    and I've put in a lot of time on a sentencing like this.

9         THE COURT:  Let me say, if you're arguing on the

15:17 10   timing issue, don't bother.  I will give you all the time you

11   need.

12        Respectfully, Mr. Stolper, I made an error the

13   first time.  I'm not going -- I'm going to do my best to

14   avoid making an error this time, and if that requires

15:17 15   additional time, since the defendant is incarcerated, I'm --

16   I will accept reasonable requests for more time.

17        So you don't need to address that, Mr. Steward.

18        MR. STEWARD:  Yes, Your Honor.

19        THE COURT:  I am wondering if we should avoid

15:18 20   further work by you and further inconvenience and calling

21   victims probably is not a pleasant experience for the victims

22   or for you.  Maybe we first need to preliminarily review this

23   issue by briefing.

24        MR. STEWARD:  I think that would be helpful,

15:18 25   Your Honor.

35

```
 1              THE COURT:  So if you want to get together and work

 2      something out and request briefing and request a hearing on

 3      this issue so you will not be bringing folks into court only

 4      to have me state that amount is no longer an issue, perhaps

15:18 5   you want to work that out with counsel.

 6              Okay?

 7              MR. STEWARD:  That's fine, Your Honor.

 8              THE COURT:  What else?

 9              MR. STEWARD:  The only other thing I was going to

15:18 10  say, and it's more -- it's more properly addressed in the

11      briefing the court's talking about, but we had cited at one

12      point, *US versus Pham*.  It's a Ninth Circuit case, 2008, at

13      545 F.3d 712, that talks about a remand in a sentencing where

14      the sentencing is being redone.  And the *Pham* case stands for

15:19 15  the proposition that it's really resentencing de novo, as the

16      court indicated, the court wants to do, but the issue is not

17      specifically limited to that which caused the reversal and

18      the remand.

19              And, again, it's the *Pham* case.  We can -- I think

15:19 20  it would make sense if we cited that, because it may save

21      everybody a lot of work.

22              THE COURT:  Well, I will say that the guidelines

23      and 3553(a) kind of have a holistic approach, looking at the

24      thing -- I think I used the word "milieu" earlier today -- so

15:19 25  I'll be interested in what that case has to say.
```

UNITED STATES DISTRICT COURT

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

36

1            MR. STEWARD:  All right.

2            THE COURT:  Just for the record, I've always --

3       I'll just throw this out here -- I had been puzzled by the

4       notion that you sentence a man to X, it goes up on appeal.

15:20 5   The Ninth Circuit says you considered a factor you shouldn't

6       have considered; do not consider the factor.  It comes back

7       and you sentence the man to the same X.  I think that can be

8       done.  But I've always wondered, does that mean you didn't

9       really consider the factor that you shouldn't have considered

15:20 10  or whatever?

11            Now, again, my understanding is I can be told that

12      doesn't -- that doesn't apply to enhancements based on

13      victims and amount, Mr. Steward.  I'm not saying that.

14            Let's just say "a factor."

15:20 15            I considered a factor.  Not a mathematical figure

16      you're talking about, but I considered a factor, and it comes

17      back to me.  And a linear logic would have to say the

18      sentence should be lower, but that's not the case.  And I

19      think part of the reason is you do have to have a holistic

15:21 20  approach on the matter.

21            And so those are some of the thoughts I've

22      considered on the matter and maybe this case and others will

23      help me solidify that issue.

24            MR. STOLPER:  Your Honor, I'm not sure it will

15:21 25  help, but both Mr. Steward and I -- I'm not sure when

UNITED STATES DISTRICT COURT

033011 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

37

1   Your Honor took the bench, but Mr. Steward and I were both

2   here before *Booker* and before there was the 3553(a) factors

3   with the same force, and I'll just comment that it's a -- it

4   really is a much more complex sentencing process than it used

15:21 5   to be.

6        Mr. Steward will, I think, back me up where it used

7   to be that if you tabulated the guidelines and the court will

8   pick a -- pick a -- in most cases, pick a range -- pick a

9   mid-point, low-end, or high-end, and that was really the

15:21 10   entire sentencing.  And I think that in the post-*Booker* era,

11   judges are expected to exercise their discretion independent

12   of the guidelines, which makes these remands, I think, all

13   the more difficult to everyone.

14        THE COURT:  I appreciate that insight, and you have

15:22 15   been at this -- both of you have been at this --

16        MR. STOLPER:  Too long, Your Honor.

17        THE COURT:  -- longer than I.  So I welcome any

18   further elucidation you can give me.

19        And I've given you my inclination to provide

15:22 20   further time as needed.

21        I will also repeat, you know, my concern that

22   victims not be contacted unnecessarily, and I think that can

23   be avoided by preliminarily looking at this issue of

24   revisiting the amount after the Ninth Circuit approved of our

15:22 25   earlier decision.

UNITED STATES DISTRICT COURT

1        All right.  So those are all thoughts.  I think

2   counsel are going to have to talk to each other and see how

3   they want to set this up.

4        Is there anything further at this time?

15:22  5        MR. STOLPER:  No, Your Honor.

6        Thank you.

7        MR. STEWARD:  No, Your Honor.

8        THE COURT:  All right.  Thank you, Counsel.

9        Mr. Showalter, we'll continue to work on this and

15:23  10  try and get the answer right this time.

11        Thank you.

12        (End of proceedings.)

13                               ***

14                       Certificate

15        I hereby certify that the foregoing is a true and

16   correct transcript of the stenographically recorded

17   proceedings in the above matter.

18        Fees charged for this transcript, less any circuit

19   fee reduction and/or deposit, are in conformance with the

20   regulations of the judicial conference of the United States.

21   _____    06/27/2011
                                          _____
22   DENISE PADDOCK, CMRS, RMR, CRR, CSR 10199    DATE

23

24

25

UNITED STATES DISTRICT COURT