101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

 1   here in court and I realize you have schedules and perhaps

 2   you've addressed with Mr. Stolper his desire that you

 3   testify.

 4         If you have something that's going to take you away

14:29  5   from the court and you want to testify, raise your hand

 6   and we might squeeze you in out of order.

 7         I don't know if you are here.

 8         I don't know how much longer this is going to take.

 9         I'm just saying if you need to go and you want to

14:30 10   testify now, please come forward and whisper in Mr. Stolper's

11   ear and we'll see if we can put you on.

12         (Pause in the proceedings.)

13         MR. STOLPER:  Your Honor, there is a couple people

14   who would like to take the court up on its offer.

14:30 15   THE COURT:  Well, I don't -- let's see.

16         These are all people that need to leave right away?

17         MR. STOLPER:  That's right.

18         THE COURT:  Okay.

19         Then I will go ahead and do that and perhaps in the

14:31 20   meantime we can get our system working.

21         It probably needs the Elmo switch flipped.

22         THE CLERK:  Yes.

23         THE COURT:  All right.

24         Based on what you've just said, then, Mr. Stolper,

14:31 25   Mr. Darmer, I hope we're -- we're just trying to accommodate

UNITED STATES DISTRICT COURT

Case 8:06-cr-00129-AG   Document 192-1   Filed 01/26/13   Page 2 of 50   Page ID #:6123
101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

48

1    everybody here, so our -- we're now going to hear from some

2    of the victims, and what I'd like for them to do -- they've

3    all been sworn in, and I'd like to have them speak from the

4    lectern here.

14:31 5           And if you would wish to cross-examine them,

6    Mr. Darmer, you can cross-examine them at the lectern or you

7    can have them sit up here in the witness seat.

8              It's up to you.

9              All right.

14:31 10          And with that -- yeah; don't scratch the platen

11   there.

12             We don't need to worry about that right now.

13             We'll be ready to go when we're ready to go.

14             There you go.

14:32 15          Slide it the other way.

16             MR. STOLPER:  I know the part you're looking for,

17   Your Honor.

18             THE COURT:  There you go.

19             So we're going to be talking about that when we

14:32 20   finish with these witnesses.

21             There is a career for you in the law, Ms. Bredahl.

22             All right.  Who would like to step forward first?

23             Now, Mr. Stolper, we had people speak at the last

24   sentencing hearing, did we not?

14:32 25          MR. STOLPER:  Yes, Your Honor.

|   |   |
|---|---|
| 1 | THE COURT:  Are these the same people? |
| 2 | MR. STOLPER:  I don't remember, Your Honor. |
| 3 | The witness says "no," Your Honor. |
| 4 | You can certainly ask that question. |
| 14:32 5 | THE COURT:  All right. |
| 6 | Obviously, in the interest of time, there are |
| 7 | limitations to how much testimony we can receive here, but |
| 8 | please identify yourself. |
| 9 | **JERILYNN GOSSARD,** |
| 14:33 10 | witness, called by Plaintiff(s), previously sworn |
| 11 | THE VICTIM:  My name is Jerilynn Gossard. |
| 12 | THE COURT:  All right. |
| 13 | And how would you like to proceed, Mr. Stolper? |
| 14 | MR. STOLPER:  I'll just ask a couple questions, |
| 14:33 15 | Your Honor. |
| 16 | THE COURT:  Yes, please. |
| 17 | Spell the name, please. |
| 18 | THE VICTIM:  J-e-r-i-l-y-n-n G-o-s-s-a-r-d. |
| 19 | **DIRECT EXAMINATION** |
| 14:33 20 | BY MR. STOLPER: |
| 21 | Q.   Ms. Gossard, were you an investor in the defendant's |
| 22 | High Park? |
| 23 | A.   Yes. |
| 24 | Q.   How much did you invest? |
| 14:33 25 | A.   50,000. |

UNITED STATES DISTRICT COURT

Case 8:06-cr-00129-AG   Document 192-1   Filed 01/26/13   Page 4 of 50   Page ID #:6125
101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

50

1    Q.   Did you receive recovery of that -- of any of that money

2    after the -- after the defendant was apprehended?

3    A.   After?

4    Q.   Yes.

14:33  5    A.   No, I don't.  No.

6    Q.   Did you receive money back before the defendant was

7    apprehended?

8    A.   Yes.

9    Q.   How much did you receive back?

14:33 10    A.   10,000.

11         MR. STOLPER:  No more questions.

12         THE COURT:  Did you identify the total amount?

13         MR. STOLPER:  Yes, Your Honor.

14         She invested 50 and received 10 back before the

14:34 15    defendant was apprehended.

16         THE COURT:  And she's listed on the schedule at 50.

17         Next.

18         Thank you.

19         THE VICTIM:  Thank you.

14:34 20         THE COURT:  Oh, and Mr. Darmer?

21         MR. DARMER:  No questions.

22         THE COURT:  All right.  Next.

23         Please step forward.

24         Yes, sir.

14:34 25         Your name.

101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

```
 1              THE VICTIM:  Josh Kriteman.
 2              THE COURT:  Actually, I'm going to do one other
 3    thing because people may now be leaving.
 4              I'm going to ask this question.
 5              Before you leave, ma'am, I have a question for
 6    everyone.
 7              I'm just going to ask this question.
 8              If you consider yourself a victim of Mr. Showalter,
 9    raise your hand.
10              (Pause in the proceedings.)
11              THE COURT:  All right.
12              Now, there are some people that aren't involved in
13    this case, so you're going to need to raise your hand on this
14    as well as anyone who is involved.
15              I'm going to ask you if you do not consider
16    yourself to be a victim, raise your hand.
17              Okay.
18              Keep it up.
19              Keep it up.
20              Okay.  We've got the attorneys, we've got my
21    clerks, we've got the US attorney, a gentleman in the back.
22              Okay.  That's helpful to me.
23              Go ahead, sir.
24              MR. STOLPER:  Just, Your Honor, before we start, I
25    just wanted to note for the record, that Ms. Gossard was not
```

1    on the Whelan declaration.

2              THE COURT:  Excuse me.

3              Dennis and Jerilynn Gossard.

4              MR. STOLPER:  Gossard, G-o-s-s- -- on the Whelan

14:35  5    declaration or on the PSR.

6              THE COURT:  This is PSR.

7              MR. STOLPER:  Yes, Your Honor.

8              She's on the PSR; but part of what I'm trying to do

9    here, Your Honor, is show how different lists corroborate

14:35 10    each other.

11             She's on the PSR.

12             Special Agent Whelan did not contact her so that's

13   loss that would not be on the Whelan declaration.

14             THE COURT:  What's the total amount on the Whelan

14:36 15    declaration?

16             MR. STOLPER:  Total amount listed -- Your Honor, I

17   didn't -- we didn't total the Whelan declaration.

18             We didn't do a total on that declaration because,

19   in part, we were trying to do victim count.

14:36 20             According to Mr. Darmer, the amount comes out to

21   be --

22             THE COURT:  It's a little difficult with all the

23   documents to have them all at our fingertips.

24             MR. STOLPER:  It is, Your Honor.

14:36 25             (Pause in the proceedings.)

101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

53

1          THE COURT:  I just saw 15.418.

2          MR. STOLPER:  Yeah, that's the PSR.

3          (Pause in the proceedings.)

4          THE COURT:  Does Mr. Darmer know what he totaled up

14:37 5   the Whelan declaration to be?

6          MR. DARMER:  Your Honor, we total it up at

7   9 million zero -- 9,044,000 -- excuse me -- 9,044,000

8   and zero cents, but I hasten to add that.

9          I don't want to substitute my addition for the

14:37 10  agent's.

11          THE COURT:  I was earlier referencing your $9

12   million figure which is different from what Mr. Darmer said

13   which is different than the exhibit to the PSR.

14          MR. STOLPER:  Yes, Your Honor; sorry.

14:37 15          THE COURT:  And you're basing your conclusions on

16   the Whelan declaration?

17          MR. STOLPER:  Not at all, Your Honor.

18          I'm basing my conclusion based upon the combination

19   of all these documents.

14:37 20          The PSR has a list of all the investors and how

21   much they invested.

22          Special Agent Whelan then does a poll.

23          He called a number of investors, he didn't call all

24   of the investors, to see if the numbers -- because part of

14:37 25   what the challenge was in the victim adjustment was that the

UNITED STATES DISTRICT COURT

1    Ninth Circuit didn't believe there was sufficient indicia of

2    reliability with respect to the PSR with that one figure.

3            THE COURT:  Are you making the argument that the

4    failure to include Gossard in the Whelan declaration -- now,

14:38  5    listen carefully -- and I'm sure you'll be honest -- is

6    indicative of increased reliability of Whelan because they

7    were not included having received 10,000?

8            MR. STOLPER:  What I'm -- what I'm -- what I'm

9    suggesting, Your Honor, is the absence of her on the Whelan

14:38 10    declaration is additional evidence that the Whelan

11    declaration's $9 million figure is a conservative number

12    because it doesn't include all the victims.

13            THE COURT:  Okay.

14            MR. STOLPER:  All the government's asking for is

14:38 15    more than 7.

16            THE COURT:  All right.

17            Sir, we interrupted you.

18            State your name again, please.

19            THE VICTIM:  Josh Kriteman.

14:38 20            THE COURT:  Spell the last name.

21            THE VICTIM:  K-r-i-t-e-m-a-n.

22            (Pause in the proceedings.)

23            THE COURT:  All right.  Go ahead.

24            Mr. Stolper.

14:38 25            Do you wish to ask --

```
 1              MR. STOLPER:  Yes; sorry.

 2              I was just --

 3                    DIRECT EXAMINATION

 4    BY MR. STOLPER:

14:38 5   Q.   Mr. Kriteman, were you an investor with High Park and

 6    Mr. Showalter?

 7    A.   I was.

 8    Q.   How much did you invest?

 9    A.   $50,000.

14:39 10  Q.   How much did you get back at anytime?

11    A.   Zero.

12              MR. STOLPER:  No further questions, Your Honor.

13              THE COURT:  I do not see him on the PSR list.

14              MR. STOLPER:  It's Josh Kriteman and --

14:39 15            THE VICTIM:  Erindira Cronkhite.

16              MR. STOLPER:  Cronkhite.

17              THE VICTIM:  That's my wife.

18              THE COURT:  Is that E-r-i-n-d-i-r-a.

19              THE VICTIM:  Yes, Your Honor.

14:39 20            THE COURT:  Okay.

21              MR. DARMER:  I apologize, Your Honor.

22              Forgive me.

23              I didn't understand the connection between this

24    person and that person's name that was just stated on the

14:39 25    record.
```

UNITED STATES DISTRICT COURT

1            THE COURT:  All right.

2            On the PSR report which is what I have in front of

3    me at the moment, he is listed under his wife's name, so he's

4    not under K-r-i-t, he's under K-r-o-n-k.

14:39  5            THE VICTIM:  C-r-o-n-k --

6            Very important; I misspoke.

7            This gentleman is under Cronkhite, his wife's name.

8            Are you with me now?

9            MR. DARMER:  Yes, Your Honor.

14:40 10            THE COURT:  Did you wish to ask this gentleman any

11    questions?

12            MR. DARMER:  No.

13            THE COURT:  All right.

14            Next witness.

14:40 15            Oh, by the way, sir, you understand you were under

16    oath?

17            THE VICTIM:  Absolutely.

18            THE COURT:  All right.  Next.

19            Did you testify at the last hearing?

14:40 20            THE VICTIM:  No, sir.

21            THE COURT:  You understand you're now under oath.

22            THE VICTIM:  Yes, sir.

23            THE COURT:  Please state your name.

24            THE VICTIM:  David Ham, H-a-m.

14:40 25            THE COURT:  All right, Mr. Ham.

|        |     |                                                       |
| ------ | --- | ----------------------------------------------------- |
|        | 1   | Mr. Stolper.                                          |
|        | 2   | **DAVID HAM,**                                        |
|        | 3   | witness, called by Plaintiff(s), sworn                |
|        | 4   | **DIRECT EXAMINATION**                                |
| 14:40  | 5   | BY MR. STOLPER:                                        |
|        | 6   | Q.   Mr. Ham, were you an investor in High Park,      |
|        | 7   | Edward Showalter?                                     |
|        | 8   | A.   Yes.                                             |
|        | 9   | Q.   How much did you invest?                         |
| 14:40  | 10  | A.   $50,000.                                          |
|        | 11  | Q.   How much did you get back?                       |
|        | 12  | A.   Gateway, 2,000.                                  |
|        | 13  | Q.   And who did that come back from?                 |
|        | 14  | A.   Gateway.                                         |
| 14:40  | 15  | Q.   That was the settlement?                         |
|        | 16  | A.   Yes.                                             |
|        | 17  | Q.   And, I should ask --                             |
|        | 18  | THE COURT:   Describe further what Gateway is.        |
|        | 19  | Q.   BY MR. STOLPER:   Could you tell us what the Gateway |
| 14:41  | 20  | settlement was as best you understand it?             |
|        | 21  | A.   It was a separate civil suit against the escrow company, |
|        | 22  | the title company, for what Chapman Escrow had done, which |
|        | 23  | was incorrect.                                        |
|        | 24  | Q.   And did that take place after -- did that settlement |
| 14:41  | 25  | occur -- that litigation take place after Mr. Showalter |

101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

1    was apprehended?

2    A.   Yes, sir.

3              THE COURT:  All right.

4              Any questions, Mr. Darmer?

14:41  5        MR. DARMER:  Yes, sir.

6                    **CROSS-EXAMINATION**

7    BY MR. DARMER:

8    Q.   Yes, sir.

9              My name is Roman Darmer and I represent

14:41 10   Mr. Showalter.

11             Do you know when Mr. Showalter was apprehended?

12   A.   No, sir.

13   Q.   And do you recall receiving approximately $17,107.84 in

14   payments from High Park prior to the time he was apprehended?

14:41 15   A.   No.

16   Q.   Or at any time?

17   A.   No, sir.

18   Q.   And do you recall whether the settlement you received

19   from Gateway was $5,000 and not $2,000?

14:42 20   A.   My check was $1,333 after -- after attorney fees.

21             It may have -- it was less, but --

22   Q.   Do you know what the total check was from Gateway?

23   A.   No, sir, I don't know what the total check was.

24   Q.   Did you happen to provide that copy of that check to

14:42 25   Agent Whelan or anyone from the government?

| | | |
|---|---|---|
| | 1 | A.   I have not. |
| | 2 | Q.   Did you ever get asked to provide a copy of that check? |
| | 3 | A.   No, sir. |
| | 4 | Q.   Thank you. |
| 14:42 | 5 | THE COURT:  Anything further? |
| | 6 | MR. STOLPER:  No, Your Honor. |
| | 7 | THE COURT:  All right. |
| | 8 | Thank you, sir. |
| | 9 | THE VICTIM:  Thank you. |
| 14:42 | 10 | THE COURT:  Next. |
| | 11 | (Pause in the proceedings.) |
| | 12 | THE COURT:  Did you testify at the last hearing? |
| | 13 | THE VICTIM:  Me? |
| | 14 | THE COURT:  Yes. |
| 14:42 | 15 | THE VICTIM:  No. |
| | 16 | THE COURT:  You understand you are now under oath? |
| | 17 | THE VICTIM:  Yes. |
| | 18 | THE COURT:  Please state your name. |
| | 19 | THE VICTIM:  Leonard Pinkowski. |
| 14:42 | 20 | THE COURT:  Spell it, please. |
| | 21 | THE VICTIM:  P-i-n-k-o-w-s-k-i. |
| | 22 | And "Leonard" is L-e-o-n-a-r-d. |
| | 23 | LEONARD PINKOWSKI, |
| | 24 | witness, called by Plaintiff(s), sworn |
| | 25 | //                                                    // |

DIRECT EXAMINATION

1

BY MR. STOLPER:

2

Q.   Mr. Pinkowski, how much money did you invest -- did you

3

invest money in Mr. Showalter High Park?

4

14:43  5    A.   Yes.

Q.   How much did you invest?

6

A.   Total?

7

Q.   Yes.

8

A.   350,000.

9

14:43 10   Q.   Okay.  And you received some of that money back?

A.   No, not from him, from Gateway settlement.

11

Q.   Okay.  How much did you get back from the Gateway

12

settlement?

13

A.   Approximately 105,000.

14

14:43 15   Q.   And that took place after Mr. Showalter was apprehended?

A.   Yep.

16

Q.   Is that yes?

17

You have to answer yes.

18

A.   Yes.

19

14:43 20          MR. STOLPER:  No further questions, Your Honor.

THE COURT:  Mr. Darmer.

21

CROSS-EXAMINATION

22

BY MR. DARMER:

23

Q.   Yes, sir.

24

14:43 25          Was the 105,000 you received from the Gateway

UNITED STATES DISTRICT COURT

101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

1    settlement after your attorney took a portion of the fees?

2    A.    I don't keep that much track.

3          I -- I had some of it with another gentleman behind

4    me there and the total of his check to me and their check to

14:43 5    me totaled about 105,000.

6    Q.    Referring to the check from Gateway and from another

7    individual?

8    A.    Yes.

9    Q.    Do you recall that other individual's name?

14:43 10   A.    Earl Coleman.

11   Q.    Thank you.

12   A.    He's right there.

13   Q.    Thank you.

14         THE COURT:  All right.

14:44 15         For the record, I'll note in the PSR the amount

16   listed for this gentleman is 275,000.

17         THE VICTIM:  "350."

18         THE COURT:  I understand.

19         I understand you.

14:44 20         It looks like some credit had been given against

21   the 350, apparently, to get to 275.

22         All right.  Anything further from anyone?

23         MR. STOLPER:  No, Your Honor.

24         THE COURT:  All right.

14:44 25         Thank you, sir.

1          I appreciate it.

2          THE VICTIM:  Thank you.

3          THE COURT:  Next.

4          And by the way, we're going to finish up with all

14:44  5   the -- with all these victims who wish to speak, not just the

6    ones who may be leaving.

7          Understood?

8          Okay.  Go ahead, sir.

9          Did you testify at the last hearing?

14:44 10   THE VICTIM:  No, I did not.

11         THE COURT:  Do you understand you're now under

12   oath?

13         THE VICTIM:  Yes, I do.

14         THE COURT:  And state your name, please.

14:44 15   THE VICTIM:  Lance Sherwood.

16         THE COURT:  All right.  Mr. Stolper.

17                    **LANCE SHERWOOD,**

18    witness, called by Plaintiff(s), previously sworn

19                 **DIRECT EXAMINATION**

14:44 20  BY MR. STOLPER:

21  Q.   Mr. Sherwood, were you an investor with -- with the

22  defendant, High Park, Showalter?

23  A.   Yes, I was.

24  Q.   How much did you invest?

14:45 25  A.   125,000 in High Park and 50,000 in his concrete venture.

Q.   Okay.  So 125 in High Park?

A.   Yes.

Q.   Okay.  Did you receive any of that 125,000 back?

A.   No, I did not.

14:45        MR. STOLPER:  Pass the witness.

       MR. DARMER:  No questions.

       THE COURT:  Anyone else, Mr. Stolper?

       MR. STOLPER:  One more, Your Honor.

       THE COURT:  Come forward, sir.

14:45        Did you testify at the last hearing?

       THE VICTIM:  No, I did not.

       THE COURT:  What is -- do you realize you're under

oath?

       THE VICTIM:  Yes, I do.

14:45        THE COURT:  What is your name?

       THE VICTIM:  Jeff Yarrington.

       It's spelled Y-a-r-r-i-n-g-t-o-n.

             **JEFF YARRINGTON,**

       witness, called by Plaintiff(s), sworn

14:45                **DIRECT EXAMINATION**

BY MR. STOLPER:

Q.   Mr. Yarrington, were you an investor in High Park?

A.   Yes, I was.

Q.   And was your father also an investor?

14:45 A.   Yes, he was.

1    Q.    What's his name?

2    A.    Howard Yarrington.

3    Q.    How much did each of you invest?

4    A.    $50,000.

14:46 5    Q.    $50,000 each?

6    A.    Yes.

7    Q.    Did you get a recovery from High Park after-the-fact?

8    A.    Not High Park.

9    Q.    What did you get?

14:46 10    A.    We got $5,000 each.  That was before the deduction --

11    I'm not sure -- about in the exact check that we received,

12    but it was -- started at 5,000.

13    Q.    And who was that from?

14    A.    Gateway.

14:46 15    Q.    Okay.  In addition to that, are you an investor in the

16    Bullhead City property?

17    A.    Yes, I am.

18    Q.    And just so the record's clear on this, in order to

19    receive any recovery from the sale of that property, did you

14:46 20    have to invest additional money after the Showalter -- after

21    Mr. Showalter was apprehended?

22    A.    Yes, I did.

23    Q.    How much additional money did you invest in that

24    property?

14:46 25    A.    I'm not sure.

1          My dad handled all of that and he was paying for it

2     but I know it's been at least 5,000 for my part and him more.

3     Q.   Is it your understanding that if you had not written an

4     additional check that you would be entitled to nothing from

14:47 5     the Bullhead City property?

6     A.   Correct.

7          MR. STOLPER:   Pass the witness.

8                       CROSS-EXAMINATION

9     BY MR. DARMER:

14:47 10   Q.   Good afternoon, sir.

11         With respect to the settlement that you described

12     that you and your father received, was that amount net of

13     payments to the lawyer or a lawyer that represented you?

14     A.   That -- the 5,000 was the amount we were -- we are

14:47 15     given, but the check was less than the 5,000.

16     Q.   Do you recall anything like a settlement of $50,000 from

17     Gateway to you and your father?

18     A.   No, not at all.

19     Q.   Is it your understanding that your interest -- ownership

14:47 20     interest in Bullhead City has value?

21     A.   Yeah, very little, yes.

22     Q.   But it has value?

23     A.   I have -- like I said, it has value of nothing at this

24     point.

14:47 25   Q.   Have you attempted to sell or have -- have an appraisal

Case 8:06-cr-00129-AG   Document 192-1   Filed 01/26/13   Page 20 of 50   Page ID #:6141
101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

66

1    of the property?

2    A.   No, I'm a very small investor in the whole process.

3              MR. DARMER:  Thank you very much.

4              THE COURT:  Anything further?

14:48 5         MR. STOLPER:  Yes, Your Honor.

6                    **REDIRECT EXAMINATION**

7    BY MR. STOLPER:

8    Q.   To the extent that your investment in Bullhead City has

9    property -- in order to realize -- I'm sorry -- to the extent

14:48 10   that your investment in the Bullhead City project has value,

11   for you to have realized any of that value, you had to write

12   a check after Mr. Showalter was apprehended to capture any of

13   that value; is that correct?

14   A.   That is correct.

14:48 15        MR. STOLPER:  Nothing further, Your Honor.

16             THE COURT:  Thank you, sir.

17             Please come forward.

18             Did you testify at the previous hearing?

19             THE VICTIM:  No, I did not.

14:48 20        THE COURT:  Do you realize you're now under oath.

21             THE VICTIM:  Yes, I do.

22             THE COURT:  Please state your name.

23             THE VICTIM:  Loriann Richards, R-i-c-h-a-r-d-s.

24             THE COURT:  All right.

25        //                                    //

1         Questions.

2                   **LORIANN RICHARDS**,

3            witness, called by Plaintiff(s), sworn

4                   **DIRECT EXAMINATION**

14:48  5    BY MR. STOLPER:

6    Q.   Ms. Richards, were you an investors in Mr. -- in the

7    defendant or High Park?

8    A.   Yes.

9    Q.   How much did you invest?

14:48  10   A.   151,000.

11   Q.   And how much of that 151,000 have you been able to

12   recover?

13   A.   Zero.

14            MR. STOLPER:  Pass the witness, Your Honor.

14:49  15           THE COURT:  I have a question.

16            Mr. Stolper, can you explain why she is listed as

17   12,500 on the PSR?

18            MR. STOLPER:  No, Your Honor.

19            I have no explanation other than to reenforce that

14:49  20   the PSR is very conservative.

21            THE VICTIM:  Would you like me to explain,

22   Your Honor?

23            THE COURT:  Yes.

24            THE VICTIM:  Because I invested money on more than

14:49  25   one occasion.

1          The first time being 151,000 through my corporation

2     Executive Escrow Company; the second time, personally, at

3     12.5.

4          THE COURT:  All right.

14:49  5          Mr. Stolper, would you reask your questions to make

6     sure we've covered both entities.

7          MR. STOLPER:  Yes.

8                    **DIRECT EXAMINATION RESUMED**

9     BY MR. STOLPER:

14:49 10   Q.   So the record's clear, your total investments were 151

11    or 162.5?

12    A.   My personal total investment was 12.5.

13    Q.   Right?

14    A.   My corporation's total investment was 151.

14:50 15   Q.   Of any did you receive recovery on any of that money?

16    A.   None.

17         THE COURT:  Cross-examination.

18                    **CROSS-EXAMINATION**

19    BY MR. DARMER:

14:50 20   Q.   Good afternoon, ma'am.

21         You have indicated your company is Executive

22    Escrow.

23         Are you the owner of that company?

24    A.   Yes, I am.

14:50 25   Q.   And are there any other shareholders in that company?

```
 1    A.    No, there are not.

 2              MR. DARMER:  Thank you.

 3              No further questions.

 4              THE COURT:  All right.

14:50 5         Let me -- let me ask for clarification from

 6    Mr. Darmer, to make sure I understand, is it your view,

 7    following the Ninth Circuit decision that, it's my obligation

 8    to entirely reconsider sentencing at this hearing?

 9              MR. DARMER:  Our view is that it's your obligation

14:50 10   to reconsider the loss calculation and the victim numbers

 11   because those reflect the disputed sentencing factors

 12   and then restitution.

 13             THE COURT:  And the possibility of variance?

 14             MR. DARMER:  Correct.

14:51 15        Correct, Your Honor.

 16             Both in terms to the government's proof as to these

 17   issues and then both as to the Pepper factors.

 18             THE COURT:  Does that give me the opportunity to

 19   impose a higher sentence?

14:51 20        MR. DARMER:  Certainly.

 21             THE COURT:  Thank you.

 22             Next witness.

 23             (Pause in the proceedings.)

 24             THE VICTIM:  Thank you, Your Honor.

14:51 25        THE COURT:  Yes, sir.
```

UNITED STATES DISTRICT COURT

         1                Did you testify at the previous hearing?

         2           THE VICTIM:  Yes.

         3           THE COURT:  I think I remember.

         4           And you realize you're now under oath?

14:51    5           THE VICTIM:  Absolutely.

         6           THE COURT:  And what's your name?

         7           THE VICTIM:  Arman Motamedi, M-o-t-a-m-e-d-i.

         8           THE COURT:  Go ahead.

         9                       ARMAN MOTAMEDI,

14:51   10           witness, called by Plaintiff(s), sworn

        11                     DIRECT EXAMINATION

        12    BY MR. STOLPER:

        13    Q.   Mr. Motamedi, were you an investor in the High Park or

        14    with Mr. Showalter?

14:51   15    A.   Yes.

        16    Q.   How much did you invest?

        17    A.   On two occasions, totally a total of hundred thousand

        18    dollars, which 50,000 of it went to the Bullhead City.

        19    Q.   Okay.  Of the hundred thousand dollars you invested, did

14:52   20    you receive any money back?

        21    A.   I'm not sure, but I think I might have got couple of

        22    interest checks from Mr. Showalter's High Park and then after

        23    the settlement with the escrow company I got a check for

        24    $10,000 which, after the deduction from the attorney's fees,

14:52   25    I netted $4,000.

1          So altogether I might have recovered 5,000 out of

2    my hundred thousand.

3          MR. STOLPER:  Pass the witness.

4          MR. DARMER:  No questions.

14:52 5          THE COURT:  Thank you, sir.

6          Any others?

7          Here comes someone.

8          You know, as I do this, I -- I am reviewing my

9    notes of the previous sentencing hearing where I did make a

14:52 10   note of who spoke, how long they spoke and what they had to

11   say, which -- which, I must say, tends to support the earlier

12   conclusions I made based on what we heard at the earlier

13   sentencing hearing.

14          Go ahead, sir.

14:53 15          Now, did you testify at the earlier hearing?

16          THE VICTIM:  No, sir.

17          THE COURT:  And you realize you're now under oath?

18          THE VICTIM:  Yes, sir.

19          THE COURT:  All right.

14:53 20          State your name, please.

21          THE VICTIM:  My name is Timothy Nguyen, spelled --

22   last name is N-g-u-y-e-n.

23                         **DIRECT EXAMINATION**

24   BY MR. STOLPER:

14:53 25   Q.   Mr. Nguyen, were you an investor with High Park,

1    Mr. Showalter?

2    A.    Yes.

3    Q.    And as -- how much did you invest?

4    A.    Fifty thousand.

14:53 5    Q.    Did you receive money back as a result -- did you

6    receive any money back from the defendant?

7    A.    Yes.

8    Q.    How much did you get back?

9    A.    I remember it was about 15 or 16,000.

14:53 10    Q.    And who did that come back from?

11    A.    Gateway.

12    Q.    That came back after the defendant was apprehended by

13    the federal authorities?

14    A.    Yes.

14:53 15            MR. STOLPER:  Nothing further.

16            THE VICTIM:  Thank you, sir.

17            MR. DARMER:  No questions.

18            THE COURT:  Thank you, sir.

19            I appreciate you coming in.

14:53 20            All right.

21            One other.

22            Please step forward, sir.

23            Did you testify at the previous hearing?

24            THE VICTIM:  No, sir.

14:54 25            THE COURT:  All right.

14:54   1            And do you realize you're now under oath?

    2         THE VICTIM:  Yes, sir.

    3         THE COURT:  All right.  And what is your name?

    4         THE VICTIM:  My name is Khanh Nguyen.

14:54   5            Last name N-g-u-y-e-n.

    6         THE COURT:  All right.  Mr. Stolper.

    7                     <u>**KHANH NGUYEN**</u>,

    8          <u>witness, called by Plaintiff(s), sworn</u>

    9              **DIRECT EXAMINATION**

14:54 10  BY MR. STOLPER:

  11  Q.   Mr. Nguyen, were you an investor with High Park and --

  12  and Mr. Showalter?

  13  A.   Yes, sir.

  14  Q.   How much did you invest?

14:54 15  A.   Fifty thousand.

  16  Q.   And of the fifty thousand, how much did you get back?

  17  A.   None, zero.

  18         MR. STOLPER:  Pass the witness, Your Honor.

  19         THE COURT:  Mr. Darmer?

14:54 20         MR. DARMER:  No questions.

  21         THE VICTIM:  Thank you.

  22         THE COURT:  All right.  Mr. Stolper --

  23         MR. STOLPER:  Yes, Your Honor.

  24         THE COURT:  -- as an officer of the court, tell me

14:54 25  how you selected the witnesses we just heard from.

1        MR. STOLPER:  I didn't select the witnesses we just

2   heard from.

3        THE COURT:  You did not?

4        MR. STOLPER:  The people who just walked up here?

14:54 5   THE COURT:  Yes.

6        MR. STOLPER:  I -- I -- I misunderstood the

7   question.

8        I didn't pick the people who -- the order they came

9   in.

14:54 10  The folks arrived here in the courtroom.

11       What we did is we took the last known address of

12  the victim list and we sent subpoenas within the certified

13  mail.

14       THE COURT:  I'm getting to the argument about

14:55 15  whether you possibly stacked the deck on witnesses for those

16  who did not receive large returns.

17       MR. STOLPER:  No, Your Honor.

18       Not at all.

19       I -- what we did is we took the last known address

14:55 20  of the victims and we sent out subpoenas.

21       THE COURT:  Okay.  So we have a large number of

22  people here in court.

23       Who determined who just came forward and spoke to

24  me?

14:55 25  MR. STOLPER:  They did it themselves.

UNITED STATES DISTRICT COURT

1              THE COURT:  Okay.

2              MR. STOLPER:  I had -- just so I understand and the

3    record's clear, the court asked -- and so I understand the

4    court's question -- the court asked for people who need to

14:55  5    leave the courtroom sooner rather than later.

6              Those folks, I had absolutely no idea who was going

7    to raise their hand.

8              And as the court can probably notice I'm scrambling

9    to figure out their names as they're up there on the lectern.

14:55 10             I had no role in selecting who came up there in

11   which order.

12             THE COURT:  That is true.

13             All right.

14             Any further folks want to come forward and talk on

14:55 15   this?

16             All right.  Now --

17             THE VICTIM:  Is this going to continue?

18             Can we speak later or is that it.

19             THE COURT:  We have limitations on time.

14:56 20             Yes.

21             You have your hand up, sir.

22             What did you --

23             THE VICTIM:  I would like to testify, Your Honor.

24             I've been hiding behind this TV screen.

14:56 25             THE COURT:  Here's the problem we have.

1        We have limited time.

2        At this moment I will say that on all the facts

3 presented and described by Mr. Stolper, I think there has

4 been established a loss exceeding $7 million based on the

14:56 5 witnesses.

6        Now, Mr. Darmer, I'm going to give you further

7 chance to argue because I know you have some other arguments.

8        I'm basing this, again, on all the facts presented.

9        We've not yet gotten to the appropriate standard of

14:56 10 clear and convincing or preponderance.

11        I think, based on a clear and convincing standard,

12 that amount has been established.

13        I base is, again, on all the facts presented.

14        I base it on the people who have come forward

14:57 15 and my questions just now to Mr. Stolper about whether he

16 stacked the deck.

17        I'm also considering the fact that those with the

18 greatest loss might be the most willing to testify.

19        I'm considering that.

14:57 20        That could argue in favor of the defendant.

21        I don't see that here in the forum in front of me.

22        I will also say that sampling is regularly used in

23 the law to establish statistically numbers, and I consider

24 this to be a sampling that helps establish that number, short

14:57 25 of hearing from all the victims.

101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

77

1          The -- we have the sworn statement here of

2    Mr. Whelan, we've had it tested, again, somewhat by a

3    sampling with the opportunity to cross-examine.

4          And so now that's my preliminary as to the -- let's

14:58 5    just put it -- the government's case.

6          Without pre-deciding and keeping an open mind I now

7    turn to Mr. Darmer and ask what is your response to the

8    position I've just stated?

9          MR. DARMER:  Yes.

14:58 10         Thank you, Your Honor.

11         As we submitted in our papers, while this sampling

12   is what it is, you know, we've put in checks and documentary

13   evidence that other people on the list prepared by Mr. Whelan

14   received a million -- $1.5 million in payments from

14:58 15   High Park.

16         THE COURT:  Okay.  Just a moment.

17         At this point I'd like you to turn to Page 21

18   and 26, and they're tabbed with green tabs.

19         And I hate to tell you this, but, you know,

14:58 20   those -- those clips have metal that I don't want you to

21   scratch the glass with.

22         MR. STOLPER:  There's no glass, Your Honor.

23         I won't scratch it.

24         THE COURT:  On the bottom?

14:59 25         That's sitting on it.

UNITED STATES DISTRICT COURT

101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

|  |  |
|---|---|
| 1 | MR. STOLPER:  That's plastic. |
| 2 | I won't scratch that either. |
| 3 | THE COURT:  Thank you. |
| 4 | Okay.  Green tabs on the right, Page 21 and 26. |
| 14:59 5 | MR. STOLPER:  Green tabs on the right. |
| 6 | THE COURT:  Do you know the pages I'm referring to, |
| 7 | Mr. Darmer? |
| 8 | Mr. Darmer:  No, Your Honor. |
| 9 | MR. STOLPER:  I do. |
| 14:59 10 | It's the schedule where Mr. Darmer calculates out |
| 11 | the amount on the Whelan declaration. |
| 12 | I'm familiar with it. |
| 13 | THE COURT:  But I need to see it. |
| 14 | I need you to put it on the screen. |
| 14:59 15 | MR. STOLPER:  I'm going to find it, Your Honor. |
| 16 | I don't want to scratch anything. |
| 17 | The green tabs aren't getting me there so I'm going |
| 18 | to have to find it. |
| 19 | THE COURT:  Yes, they are, Page 21 and 26. |
| 14:59 20 | THE CLERK:  There is a paper clip on one of them. |
| 21 | MR. STOLPER:  That's a different matter. |
| 22 | There we go. |
| 23 | THE COURT:  Does it have a green tab? |
| 24 | MR. STOLPER:  I take the Fifth, Your Honor. |
| 14:59 25 | (Laughter.) |

UNITED STATES DISTRICT COURT

101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

1           THE COURT:  All right.

2           Now, Mr. Darmer, do you see here Page 20 -- just

3    move a little teeny bit so we can see the page number,

4    Mr. Stolper.

15:00 5         MR. STOLPER:  Yes, Your Honor.

6           THE COURT:  -- okay.  Page 21.

7           And then flip up to Page 26.

8           It will be just an easy flip.

9           Tell me the difference between those two.

15:00 10        I mean, some of the figures are the same -- some of

11   them aren't -- I want to hear your explanation of the

12   difference.

13          MR. DARMER:  Your Honor, the second listing, the

14   one on Page 26, which is now up in front of you, includes a

15:00 15  $10,500,000 sum for pledged collateral based on appraisals,

16   appraised values that we submitted in support of our papers.

17          The other one does not.

18          THE COURT:  Okay.  Flip back, because I think

19   there's another difference.

15:00 20        Yeah, see the other one has the 8.4 and the 3.9.

21          MR. DARMER:  Yes.

22          The 8.4 is actual dollars based on documents that

23   we were able to find showing where a investor foreclosed on

24   or somehow obtained or sold a property, and --

15:01 25        THE COURT:  Okay.  Now, here the issue is joined.

UNITED STATES DISTRICT COURT

1          I want you to give me your arguments as to each of

2     those figures and why they are not suitable offsets.

3          MR. STOLPER:  Yes, Your Honor.

4          Let me --

15:01   5          THE COURT:  I got it.

6          You can do what you're doing.

7          MR. STOLPER:  Let me -- I'd like to start at the

8     top.

9          The first line item that's placed on Page 21,

15:01  10     Line 20, are --

11          THE COURT:  And for the record, as we've just heard

12     Mr. Darmer say, regardless of whether or not the amounts on

13     the PSR or the amounts in the Whelan are correct total

14     amounts, these are arguments from Mr. Darmer on behalf of the

15:01  15     defendant as to credit, basically, that the defendant should

16     give or amounts to be subtracted from the total amount and I

17     think you're about to tell me your position as to why they

18     should not be subtracted.

19          MR. STOLPER:  Yes, Your Honor.

15:02  20          I'll go through each line item.

21          The first are settlements received by investors,

22     and that total is 3,135,000.

23          The reason that should not be counted are the

24     reasons we set forth in our papers.

15:02  25          That settlements received after the, in fact, from

101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

 1    Gateway are simply not offsets.

 2          The law is clear on that and --

 3          THE COURT:  And if the law weren't that way, it

 4    would mean that someone who has a good insurance policy could

15:02 5    never be the victim of a crime.  It would also mean that

 6    criminals should probably pick on people with good insurance

 7    policies.

 8          MR. STOLPER:  Like banks with FDIC insurance,

 9    Your Honor, and that's correct.  That's why that's not the

15:02 10    law.

11          THE COURT:  And that strikes me as a pretty

12    powerful argument.

13          What's your response to that?

14          MR. DARMER:  This is not an insurance claim paid.

15:02 15          This was a settlement based on allegations that

16    Gateway participated in and facilitated the underlying

17    criminal conduct.

18          THE COURT:  Okay.

19          MR. DARMER:  They were a party to the criminal

15:03 20    conduct.

21          THE COURT:  I appreciate that clarification.

22          MR. STOLPER:  And, Your Honor, even if that were

23    true, the guideline is clear that those payments would have

24    had to have been made before he was apprehended.

15:03 25          So even if you credit Mr. Darmer's unsubstantiated

101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

1    allegation that Gateway was a coconspirator of Mr. Showalter,

2    the fact is that Gateway settlements came after the scheme

3    was over and therefore there is no credit.

4           THE COURT:  Next line item.

15:03 5           MR. STOLPER:  Payments received by investors from

6    High Park.

7           There Mr. Darmer puts down a million -- a

8    $1.5 million figure.

9           You know, the reason I have people here is to ask

15:03 10    people, and Mr. Darmer asked them, didn't you receive money

11    back from High Park in this amount, $50,000?  And each of

12    them said, that was not what happened and so this is one of

13    those things where I saw Mr. Darmer's numbers, I saw his

14    checks, but it doesn't appear to the government that there

15:03 15    was any -- candidly, I was -- I was unable to trace back how

16    that money was an offset.

17           THE COURT:  All right.  And the total is 1.5

18    thereabouts?

19           MR. STOLPER:  Yes, Your Honor.

15:04 20           THE COURT:  All right.

21           Mr. Darmer.

22           MR. DARMER:  As set forth in our exhibit, these are

23    just checks, these are checks payable to individual

24    investors, with their names on them, money, that cleared a

15:04 25    bank from High Park prior to the time the scheme was

101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

1    identified and prior to his apprehension.

2          I don't know what better evidence there is of a

3    payment to an individual.

4          MR. STOLPER:  If I may, Your Honor, that doesn't

15:04 5    mean that those are offsets for loss.

6          Those could be payments that were made for any

7    number of reasons.

8          Those could also be, someone makes an investment of

9    $55,000 and then it gets reduced it $50,000 and then he sends

15:04 10    back a $5,000 check.

11          Just showing that a check is going from point A to

12    point B doesn't show that it's an offset loss.  All that it

13    shows is that it's a check going from point A to point B.

14          THE COURT:  Next line item.

15:04 15          MR. STOLPER:  Receiver and trustee expenses, this

16    is $977,000 and I'll group that in together with

17    Mr. Showalter's services to investors.

18          I find the second -- I'll start with the second

19    line item because I find that one to be particularly

15:05 20    troubling.

21          Mr. Darmer is asking -- and I -- I -- I say this

22    with complete seriousness.

23          He is asking that the High Park investors pay

24    Mr. Showalter for defrauding them.

15:05 25          That's what that line item amounts to.

1    He's asking that they pay him an hourly rate for

2    running the High Park scheme, that he believes that is not

3    supported by the law and is, candidly, an outrageous --

4         THE COURT:  What if he is really saying that he's

15:05 5    asking for payment for workout efforts after things got

6    difficult?

7         MR. STOLPER:  If he's asking for credit for workout

8    efforts after things got difficult what he's asking for is

9    that the people at High Park pay Mr. Showalter to help

15:05 10    Mr. Showalter recover the money that Mr. Showalter stole from

11    them.

12         I find that to be equally reprehensible.

13         THE COURT:  Mr. Darmer cites some cases that

14    actually kind of surprise me.

15:05 15         MR. STOLPER:  The cases that he cited were -- my

16    recollection were that the cases that he cited dealt with

17    defendants who were offering legitimate services.

18         You know, they were a plumber or --  not people who

19    were trying to offset their own loss.

15:06 20         Mr. Showalter was trying -- I just want to put this

21    in -- in sharp relief -- Mr. Showalter asked for a variance

22    at the last sentencing hearing because of all of his "good"

23    efforts in trying to help the victims out.

24         That was part of his -- part of his arguments that

15:06 25    he worked tirelessly to help the victims get their money back

```
 1    in working on the Bullhead City property.
 2            Now he's asking not just for credit against
 3    sentencing, but actual payment for that work.
 4            THE COURT:  Okay.
 5            When I said Mr. Darmer offered cases and that was
 6    surprising, it wasn't surprising you offered cases.
 7            I was surprised at what you were claiming they were
 8    holding.
 9            MR. STOLPER:  (Nodded head.)
10            THE COURT:  So what is your response?
11            MR. DARMER:  That the -- that these services were
12    in the --
13            THE COURT:  And by the way I need to clarify that;
14    I'm sorry.
15            I wasn't suggesting you were misquoting it.
16            I was surprised that the cases would hold that way
17    so that's what I need to hear from you.
18            MR. DARMER:  For reasons -- for reasons like this
19    situation, so after the receivership was established,
20    Mr. Showalter was approached by and did spend a great deal of
21    time trying to work out various properties.
22            For example, he worked extensively to achieve or
23    avoid a change of zoning with respect to the Bullhead City
24    project.
25            THE COURT:  Okay.  So it's your view that gets him
```

1    a deduction on the loss amount?

2          MR. DARMER:  Yes.

3          Now, what that amount should be, I laid out what

4    our estimate was based on his prior compensation.

15:07  5          THE COURT:  All right.  Mr. Stolper, next.

6          MR. STOLPER:  Profits from sale or possession of

7    properties.

8          THE COURT:  Wait a minute.

9          Now, there were two --

15:07 10          MR. STOLPER:  I'm sorry; receiver --

11          THE COURT:  I don't have it in front of me, but you

12    need to address the one above the amount we just described.

13          MR. STOLPER:  Yes, Your Honor.

14          It's receiver -- it's receiver and trustee's

15:07 15    expenses.

16          The receiver and the trustee have to incur expenses

17    in order to account for the defendant's fraud.

18          Again, the defendant is asking for an offset for

19    the people who go out and spend their time trying to

15:07 20    calculate how much the defendant stole.

21          That's why I grouped it together with the defendant

22    wanting to get paid for that as well.

23          The receiver expenses are a reasonable, foreseeable

24    outcome of the defendant engaging in a Ponzi -- in a real

15:08 25    estate fraud, a Ponzi scheme, so he's accountable for

101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

1    those expenses.

2         And let me be clear, we're not asking for any loss

3    associated with those expenses.

4         They're certainly not entitled to an offset based

15:08 5    upon those expenses.

6         MR. DARMER:  Those monies were available in the

7    estate to be paid out to investors and were not, as the

8    presentence report at the prior sentencing made clear, there

9    were a number of investors who were very dissatisfied

15:08 10    and unhappy with the performance of the receiver and the

11    trustee and were seeking assistance from Mr. Showalter

12    because they allowed the properties to disintegrate, not be

13    sold and ultimately to be abandoned.

14         MR. STOLPER:  And as we cited in our prior

15:08 15    sentencing position, even if the SEC, the trustee or the

16    receiver engaged in gross negligence, the defendant's still

17    responsible for that loss.

18         There's no offset associated with it.

19         And, again, what we're asking for -- the defendant,

15:09 20    is asking for an offset to compensate the trustee whose job

21    it is to clean up his mess and now as I understand it he

22    wants an offset for the trustee who he said did a bad job

23    cleaning up his mess.

24         THE COURT:  All right.  Next point.

15:09 25         MR. STOLPER:  Profits from sale or possession

UNITED STATES DISTRICT COURT

1    of properties.

2            A number of properties were foreclosed on.

3            A number of them were sold.

4            What is missing in -- in -- in -- from -- from --

15:09 5    from -- from Mr. Darmer's filings are the vast majority of

6    that money, and I believe all the money he is referring to

7    went to the first lienholders.

8            That was the problem the trustee had with all of

9    these properties.

15:09 10            THE COURT:  Response, Mr. Darmer?

11            MR. DARMER:  No; I don't believe that's true,

12    Your Honor.

13            These were payments that went to these investors.

14            If you give me a moment, I'll get the exhibit.

15:09 15            (Pause in the proceedings.)

16            THE COURT:  I noted Mr. Showalter was shaking his

17    head so he's not accepting that factual premises, perhaps.

18            Feel free to talk to your counsel at any time.

19            THE DEFENDANT:  Thank you, Your Honor.

15:10 20            (Pause in the proceedings.)

21            MR. DARMER:  Yes.

22            Thank you, Your Honor.

23            I was referring to our Exhibit 97 which shows

24    the -- again, this is -- this is information from public --

15:10 25    public records of sold properties, so we identified those

1    properties that had been sold by an identified investor from

2    the Whelan list and the sale amount and that's where that

3    dollar figure comes from.

4         MR. STOLPER:  And I recall that, Your Honor, but

15:10 5    what that dollar figure doesn't account for is when people

6    sell their house off they've got to pay the lienholders.

7         Someone can take possession of my house,

8    Your Honor, but when it comes time for them to sell they're

9    going to be very disappointed with what they're going to get

15:10 10    at the end of the day.

11         He's asking for a full offset for the gross amount

12    the property sold for without taking into account the fact

13    that Mr. Showalter borrowed, not from these folks, but

14    largely from institutions, who had first perfected liens on

15:10 15    those properties.

16         I don't want to be flip but it's a phony number.

17         Because it says I sold my house for $2 million

18    and therefore I got $2 million.

19         That's not how it works.

15:11 20         THE COURT:  Okay.  Next item.

21         MR. STOLPER:  The final item is the value of the

22    Bullhead City property.

23         And what we heard from the witness, Mr. Yarrington,

24    who was one of the people who had interest in Bullhead City

15:11 25    was that for these folks to get any interest in

1    Bullhead City, they had to make an additional investment.

2            And so if they didn't write an additional check

3    they were not entitled to any part of the Bullhead City

4    property.

15:11 5            THE COURT:  Response, Mr. Darmer?

6            MR. DARMER:  We -- we -- we recognize that they did

7    pay a certain amount of money to obtain the value of the

8    property, but given the appraisal value of the property,

9    their value, that is in excess of what they paid, should be

15:11 10   an offset.

11           MR. STOLPER:  And, again, Your Honor, we heard from

12   a witness who said that his value's next to zero.

13           THE COURT:  Now, I want to be sure you've covered

14   both Page 21 and 26.

15:11 15           MR. STOLPER:  That was Page 21.

16           The Page 26 --

17           THE COURT:  That's one additional item.

18           MR. STOLPER:  Well, it's a different item.

19           He -- he -- Mr. Darmer revalued the Bullhead City

15:12 20   property from $3 million and he values it on this schedule at

21   $10 million, and I won't repeat myself, it's the same

22   argument I just made.

23           THE COURT:  Okay.  All right.

24           Response to that, Mr. Darmer?

15:12 25           MR. DARMER:  Yes.

```
 1            THE COURT:  And please bring my file back.

 2            MR. STOLPER:  Yes, Your Honor.

 3            THE COURT:  And hand it to Ms. Bredahl.

 4            You can walk in the well here.

15:12 5       In the well, in the well.

 6            MR. STOLPER:  I'm just going to get the rest of it.

 7            THE COURT:  Go ahead.

 8            Well, maybe not.

 9            Yes, Mr. Darmer.

15:12 10          MR. DARMER:  The -- the -- the second figure

11       relates to a higher appraisal, not just an as-is, but a --

12            Excuse me one second.

13            (Discussion held off the record.)

14            MR. DARMER:  I'm sorry, Your Honor, that figure

15:12 15  reflects all 17 properties that were in the possession of the

16       receiver at the time the company was taken over

17       and Mr. Showalter was ousted, appraisals were done around

18       that time in the 2005 time period and that figure reflects

19       the sum total of those appraisals.

15:13 20          THE COURT:  All right.

21            All right.

22            Any further argument on a determination of the

23       amount of the loss?

24            MR. STOLPER:  No, Your Honor.

15:13 25          MR. DARMER:  Only that as our -- as our papers
```

UNITED STATES DISTRICT COURT

101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

1   indicate we had access to limited -- limited documents from

2   High Park, limited documents from the receiver.

3        We weren't able to get files related to closings

4   that would have shown additional payments to investors,

15:13 5   additional settlement agreements, so we believe there are

6   substantial additional payments that would have been

7   reflected had we had an opportunity to get those materials.

8        MR. STOLPER:  Your Honor, can I respond to that?

9        THE COURT:  Yes.

15:13 10        MR. STOLPER:  This case is a 200- --

11        THE COURT:  - -6.

12        MR. STOLPER:  -- -6 filing.

13        This case has been on remand for well over a year.

14        The only subpoena that has been quashed by this

15:14 15   court was the one we discussed here today.

16        The defendant had ample time, and you'll recall the

17   court granted him subpoena authority to go out and get

18   whatever records the defendant wanted to get.

19        THE COURT:  And subpoenas did issue.

15:14 20        MR. STOLPER:  And subpoenas did issue.

21        So I understand the defendant may not have every

22   scrap of documents that they --

23        THE COURT:  All right.  I'm ready to rule on the

24   amount involved.

15:14 25        MR. STOLPER:  Thank you, Your Honor.

101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

1           THE COURT:  As I view the witnesses coming forward

2      and look over the sheets previously provided, including those

3      attached to the presentence report and review of the notes I

4      took at the previous hearing, I am convinced that the ruling

15:14 5  I previously made, that there was over a $7 million loss, is

6      correct.

7           I believe the evidence on this now is overwhelming.

8           Again, as the witnesses come forward and as I

9      review all the materials presented to me as identified by

15:15 10 Mr. Stolper, I believe the evidence is overwhelming and it

11     certainly is established on a clear and convincing basis

12     and most certainly established on a preponderance of the

13     evidence basis.

14          I was not convinced by the defense argument for a

15:15 15 clear and convincing standard.

16          I believe the types of determinations here are the

17     types of determinations that happen in all cases like this

18     and there is nothing here that would require a clear and

19     convincing standard.

15:15 20    I think it would swallow up the rule and most

21     everything would become a -- well, a great -- a great amount

22     of things would become a clear and convincing standard, which

23     were not intended to be by that rule.

24          But, in any event, whether it's preponderance or

15:16 25 clear and convincing, I find that the damages -- the loss --

UNITED STATES DISTRICT COURT

101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

94

```
 1    not the damages -- the loss exceeded 7 million and,

 2    therefore, the correct addition to the offense level is at

 3    the level of 20.

 4         That brings us, then, to victims.

15:16 5    The question is whether -- I've already made a

 6    determination that there's at least ten.

 7         The question is whether there is -- is it 50 or

 8    more or above 50?

 9         MR. STOLPER:  Fifty, Your Honor.

15:16 10   THE COURT:  It's 50 to 250.

11         It is specifically 50 to 250.

12         MR. STOLPER:  Yes, Your Honor.

13         THE COURT:  Now, Mr. Stolper, I want you to

14    specifically identify for me the evidence you have that

15:16 15   justifies a finding of 50 victims justifying an addition of 4

16    points under 2B 1.1(b)(2)(A).

17         MR. STOLPER:  Yes, Your Honor.

18         And so the record's clear, the defendant already

19    stipulated to a two-level addition, so it's really two levels

15:17 20   we're asking for.

21         THE COURT:  That's what I meant to say.

22         Oh, I said an addition of 4 points.

23         It's addition of 2 points to the existing 4.

24         Thank you for that clarification.

15:17 25   MR. STOLPER:  Your Honor, there's three primary
```

UNITED STATES DISTRICT COURT

Case 8:06-cr-00129-AG   Document 192-1   Filed 01/26/13   Page 49 of 50   Page ID #:6170
101012 DCCD GUILFORD 10D SHOWALTER SACR 06-129-AG

95

1   sources that the government would ask the court to look to in

2   arriving at a conclusion that there were more than 50

3   victims.

4          The first is the Whelan declaration.

15:17 5          And not to belabor it, Special Agent Whelan got on

6   the phone and called up, I believe the number is 66 people,

7   and talked to them and asked them --

8          THE COURT:  You know what, I'm going to interrupt

9   you.

15:17 10          I'm sorry to interrupt you.

11          Before we get off the amount, I am going to do one

12   other thing on the amount.

13          I don't want this to be too far away from the

14   amount.

15:17 15          Concerning the conclusion I just made as to the

16   amount of loss, I am finding that the evidence presented to

17   me is credible.

18          I believe the FBI -- the FBI agent's telephone

19   survey is sufficiently reliable because its content is

15:18 20   entirely consistent with the evidence heard by the court in

21   the victim letters and in what we heard here today.

22          It's consistent with the defendant's plea

23   agreement.

24          It's consistent with the PSR and I'm making a

15:18 25   credibility determination here that the statement under oath

1    by Agent Whelan is sufficiently reliable for me to make the

2    conclusions I mentioned a few moments ago.

3            Now, moving off of damages on to number of victims,

4    I'm sorry I interrupted.

15:19  5            Go ahead.

6            MR. STOLPER:  Yes, Your Honor.

7            Special Agent Whelan spoke with 62 people who

8    invested with Mr. Showalter and who recovered less than their

9    total initial investment and I wanted to just belabor how

15:19 10   conservative those numbers are.

11            Even if you recover all your money you're still a

12   victim.

13            If it's a no-loss fraud and you have to go

14   through the foreclosure process, you're still a victim.

15:19 15            But in an abundance of caution, we distance ourself

16   from those numbers, Special Agent Whelan spoke to 62 people

17   who were out dollars from Mr. Showalter.

18            That's a textbook victim.

19            And Special Agent Whelan's declaration is

15:19 20   corroborated almost to the dollar by what we heard today from

21   the folks who came up and spoke.

22            And I'll also note that some of the folks who came

23   up and spoke were not spoken to by Special Agent Whelan which

24   is another indicia of how conservative that 62 person number

15:20 25   is.

UNITED STATES DISTRICT COURT